By the Court, Strong, P. J.
The defendant was convicted, the court of general sessions of the city and county of Nework, of a misdemeanor under the 2d section of the act to pre *218 vent the procurement of abortion, passed on the 13th of May, 1845. Various exceptions were taken by her counsel to the decisions of the court on the trial, and they are included in the bill which has been returned to us with the writ of error. No more of the evidence, adduced on the trial, is before us than such as is necessary to point or elucidate the questions of law raised for our consideration. We have not the means of deciding whether the evidence was sufficient to warrant the conviction ; nor, if we had, could the most conclusive evidence against the defendant, or the fact that the public, justly detesting the crime for which she stands charged, fully acquiesce in the propriety of her condemnation, and call loudly for her punishment, at all influence our determination. The laws were made as well for the protection of the innocent unjustly assailed, as for the punishment of the guilty; and to be efficacious must be universal and uniform in their application. They ought not to, and cannot, be bent to suit the circumstances of any particular case.
It is contended in behalf of the defendant, that the indictment is invalid; that it neither charges a felony under the act of March 4th, 1846, nor a misdemeanor under the act of May 13th, 1845. So far as relates to the charge of felony, there is no allegation that the defendant used the means to procure the abortion with intent thereby to destroy the child. That is a part, and, as we deem it, an essential part of the definition of the offence contained in the act of 1846. When a particular intent accompanying an act is requisite to constitute a crime, it should be averred in the indictment. (6 East’s Rep. 473, 4, 1 Chit. Cr. Law, 233.) The decision of the twelve judges of England, that it was unnecessary to aver an intent to commii a felony in breaking into a house, to constitute a burglary where a felony is charged to have been committed after enter ing the house, which was quoted on the argument, is no adverse to this proposition. One of the definitions of burglar given by Lord Hale, is the breaking and entering a house ii the night, and committing a felony therein. There the actúa commission of the felony, after entering the house, is equivalen *219 to a felonious intent while breaking in. In the case under consideration, the offence was created by the statute; and in such cases it is well settled that the statutory description should be embodied in the indictment. (1 Ch. Cr. L. 218. 1 East, 157. Leach’s Cr. L. 82, 556. Hawkins, b. 2, ch. 25, § 110.) The ¡principle on which The People v. Enoch, (13 Wend. 159,) was ¡decided is inapplicable to this case. It was there determined ¡that as killing a human being with a premeditated intent to do o was murder at common law, and was only retained, not ¡constituted, such crime by the statute, it was not necessary to hange the form of the indictment. As the indictment in this case omitted an essential part of the statutory description of the felony, it is so far invalid. The conviction in this case, howver, was not for a felony, but for a misdemeanor; and the [material question is whether the latter offence is sufficiently ¿barged. If it is, that will sustain the conviction (if otherwise alid,) notwithstanding there is an allegation of facts characdzing a higher crime. The strictness with which indictments were formerly construed has been considerably relaxed ; ind it is right that it should be so, while the substantial rights ¡f the accused are preserved. The natural leaning of the ind, observes Lord Kenyon, (1 East, 314,) is in favor of prisluers; and in the mild manner in which the laws of this county are administered it has been a subject of complaint, with lime. that the judges have given way too easily to formal objctions in behalf of prisoners. Lord Hale remarks, (2 Hale’s Pl. C. 193,) that the strictness required in indictments was Town to be a blemish and inconvenience in the law, and the ^ministration thereof; that more offenders escape by the over j.sy ear given to exceptions to indictments than by the maniIstation of their innocence, and that the greatest crimes had Ine unpunished, by reason of these unseemly niceties. Ohitty Iso remarks, (1 Ch. Cr. L. 171,) that in criminal cases, where le public security is so deeply interested in the prompt execu|n of justice, it seems the minor consideration should give liy to the -greater, and technical objections be overlooked, per than the ends of society should be defeated. The objec *220 tion to the charge for a misdemeanor in this case is not that the indictment does not state enough, but that it avers too much. That objection, if valid, would pn vent the conviction for any offence inferior to that charged in the indictment. When such convictions may be had pursuant to the 27th section of the statute containing general provisions concerning crimes and their punishment, (2 R. S: 586,) the indictment always charges-more than what is requisite to constitute the offence actually proved, But it is well settled that mere surplusage does not vitiate, so long as it is not contradictory. The indictment against the defendant charges that she administered to a pregnant woman some drug, (and in another count that she employed some instrument,) with intent thereby to procure a miscarriage of such patient. That is all which the 2d section of the act of May 13th, 1845, requires, to constitute a misdemeanor. The indictment, however, goes further, and alleges that the patient was quick with child, and that the death of such child was effected, and characterizes the act of the defendant as felonious. These allegations do not contradict the charge for a misdemeanor, nor do they contain a valid charge of felopy which would merge the misdemeanor; because, as has been before remarked, there is no allegation of an intent to destroy the child. It was contended by the counsel for the defendant, that a conviction under the indictment in question would be no bar to a subsequent indictment for a felony on the same facts, and that thus the defendant might be tried anc punished twice for the same act. That would have been al true if the indictment had contained nothing but the charge foe the misdemeanor. But the answer to this is, that if it ha<l appeared on the trial that- the defendant had been guilty of <1 felony, that would have merged the charge for a misdemeanoifl the defendant’s counsel might have called upon the court tfl instruct the jury that if they were satisfied that she was guiltfl of a felony they should acquit on the indictment then pending* and if the court had, under such circumstances, refused so tfl charge, it would have been error for which any conviotiofl would have been reversed. There can be no danger of theifl *221 being two convictions for the same act; unless the court, or the defendant’s counsel, commit some mistake which cannot be corrected on a writ of error. On the whole, we think the indictment sufficient to sustain the conviction for a misdemeanor.
Various exceptions were taken, on the trial, to the decisions of the court below, and have been argued before us with great ability. When the act authorizing bills of exceptions in ^criminal cases, (2 R. S, 1836, p. 616,) was passed, it could not have been intended that convictions should be reversed for any and every error which may have been committed on the trial. The design of that act was to protect the rights of the accused, not, certainly, to open a door through which any criminal who might have the ability to employ adroit counsel, might escape. The important and controlling question in all such cases is, whether any error has been committed which could affect the rights of the accused. If there has been any such error, however slight it may have been, the conviction should be set aside. But if counsel travel out of the case, in the examination of their witnesses, and some error is thereby produced not affect ing the accused; or if there be any error which evidently led to nothing, in neither case should there be a reversal of a conviction. There should be no inducement for counsel to wander from their cases, in criminal trials. Neither should the court be called upon to decide irrelevant questions. It is enough that they are required to decide intricate points actually and necessarily involved in the controversy, without any opportunity afforded for examination or consideration. To call upon the courts presiding on criminal trials to decide every question of law which the ingenuity of counsel may suggest, without reference to its bearing upon the case, would be throwing an intolerable burden upon them, and would often enable the worst criminals to escape, through the loopholes of the law, from merited punishment. Trials have latterly been extended to an intolerable length by the introduction of irrelevant matters. It is high time—the interests of suitors and the dignity of the law demand—that a corrective should be applied ; and there can be none more effectual than to utterly disregard all exceptions *222 not having a direct reference to the merits of the case. It is not designed to cast the slightest reflection upon the able counsel engaged for the defendant in this case. There is nothing to show that they intended to proceed any further than their duty to their clients required.
Several questions were put to Mr. Hoyt, who was called as a juror and challenged by the defendant’s counsel for principal cause, which were objected to in behalf of the defendant, but admitted by the court, and exceptions taken. But as the challenge was allowed, and the juror excluded, the defendant was not prejudiced by the allowance of those questions, and the answers which they elicited; and if such allowance was erroneous, the error cannot avail the defendant here. (2 Hill’s Rep. 205 ; 7 Id. 385.) Another person called as a juror, (Cortelyou,) was challenged to the favor by the defendant’s counsel. On his examination he stated that he had an opinion unfavorable to the general character of the defendant, and that he had formed, and still retained, an impression that if what he had read in the papers was true, she had committed the act charged. He was then asked by the'counsel for the people, on his cross-examination, whether, if he should be sworn as a juror he would disregard what he had heard or read out of court, and render a verdict on the evidence. The question was objected to by the defendant’s counsel, but was allowed to be put, by the court. The juror answered that he would endeavor to do so to the best of his ability. The triers decided against the challenge, and the juror was then sworn. An exception was taken to the allowance of the question. It is not, in general, sufficient to justify the triers in setting aside a juror, as not indifferent, that he has formed an unfavorable opinion of the character of the accused. If it should be, notorious offenders could not be tried at all. Whether it would be a valid objection that he had read a report of the facts in the public papers, and had thereby imbibed an impression against the accused, must, of course, depend upon the strength of such impression. If that should be weak, it would not disqualify the juror. If, however, it should be so strong that it would have any influ *223 ence in forming his opinion on the trial, then he would not stand indifferent, and should be rejected. The juror should be able to decide upon the evidence alone. Now, there is no one better acquainted with the strength of the impression upon the mind of the juror than himself. Indeed, all the information given to the triers upon the challenge is generally from the juror. He was in this case the sole witness. The question to which objection was made, was proper to test the strength of the juror’s impression against the defendant. The answer was such as any honest man would have made, and could not have operated to the defendant’s prejudice. The triers were bound to give it such weight as they thought right, and they very properly decided that the challenge was not true. The supreme court remark, in The People v. Honeyman, (3 Denio, 124,) that it would not be a wise or judicious act on the part of the triers to set aside the jurpr unless they find that he has such a settled opinion concerning the prisoner’s guilt, that he could not disregard what he had read or heard out of court, and render his verdict on the evidence alone.
The principal witness against the defendant was Maria Bodine, on whom it is charged the abortion was produced. The defendant’s counsel objected to her admissibility as a witness, on the ground that she had been the principal in, and instigator of, the offence charged in the indictment. The law is well settled that a principal is a competent witness against an accessary. So also are accomplices against their copartners in crime. The principle is founded on rules of public policy. In many cases there is but little other evidence; and it is better that an accomplice should be punished than that all should escape. Besides, the practice has a tendency to prevent dangerous combinations under which the worst crimes are perpetrated. In the case of David Conkling, tried for murder, in Orange county, before Van Ness, J., in 1819, Jack Hodges, who shot the deceased, and was therefore a principal, was admitted as a witness, and Conkling was convicted, partly upon his testimony. The case of The People v. Whipple, (9 Cowen’s Rep. 707,) is an authority in favor of the rule, and not against it, as was *224 supposed by the defendant’s counsel. The court there refused to admit Strang as a witness, not because he was incompetent, but because it was discretionary to admit or* reject him, and it would have defeated the ends of public jüsticé to allow him to testify. In the case of The People v. Costello, (1 Denio, 83,) it was expressly decided that the woman on whom an abortion was produced was a competent witness. There can be no doubt on this point.
It appeared from the evidence of Maria Bodine, that she went to live with a man named Cook, as a housekeeper, in July, 1845. That she had sexual intercourse with him in the following month, which was continued until the latter part of April, 1846, and that she became pregnant in the latter part of that month. After she had stated these facts on her examination, and, so far as appears from the bill of exceptions, there was nothing to contradict them, the defendant’s counsel asked this witness whether she had had sexual intercourse with any other person than Cook prior to April, 1846; which question she refused to answer, and she was sustained in such refusal by the court. It is contended that the court should have- compelled her to answer. It is apparent that the question, referring in terms to the whole of the witness’ previous life, was too general, and might have been rejected for that reason if the objection had been specifically raised. But that objection was not raised, and the court sustained the witness in her refusal, solely on the ground that she could not be compelled to give an answer which would have a tendency to degrade her character. The rule seems to be well settled in this state that a witness cannot ordinarily be compelled to proclaim his own infamy while bn the stand. But if he voluntarily waives his privilege in order to sustain a charge against another, he cannot claim it when asked other questions having a tendency to weaker! or remove such charge. That would be manifestly unjust, and could not be tolerated. The witness in this case had voluntarily proclaimed her own infamy in having constant illicit sexual intercourse with one individual, for nearly a year, and in- aiding, at least, in procuring an abortion of her child; for the *225 purpose of fixing a criminal charge upon the defendant. She thereby precluded herself from claiming the privilege of not answering questions of a similar character, if they related to the same point. 'But she could not be required further to degrade herself by going into a history of her whole life. She ought not to be compelled to give more of her disgraceful history than is essential to promote the ends of justice. The practice adopted in cases of bastardy illustrates and confirms this principle. There the mother, after degrading herself by testifying to her illicit intercourse with the reputed father, can be required to state whether she had not similar intercourse with others, about the time of the pregnation of her child. But she cannot be compelled to answer questions relating to her chastity at other periods. The question here is whether the interrogatory put to Maria Bodine was at all relevant to the facts then at issue. There was nothing at issue previous to the 12th of April, 1846. The pregnancy originated subsequent to that time; and the alleged agency of the defendant was of course at a later period. Assuredly the proposed question could not have had any direct bearing upon either of those points. Nor, so far as we can discern, could it have led to any thing material to the defence. When a party intends to coerce an answer tending to degrade a witness, he is bound to show affirmatively that the question is relevant; there is nothing to show such relevancy in this case, and the court was right in refusing to compel the witness to answer the question.
The counsel for the defendant next asked the same witness whether she had not the venereal disease, during the fall of 1845, or the winter of 1845, 6. She objected, for the same reason, to this question, and we think the court below were right in refusing to coerce an answer. The question did not refer to so long a period as that which preceded it, but it was in other respects equally objectionable.
It appears by the bul of exceptions, that when this witness was examined before the grand jury, she produced a written statement, taken down by a Mr. Brower, and subscribed by her, which, after she nad testified to its truth, was left with the *226 grand jury, and which subsequently came into the hands of the district attorney, and was in his possession on the trial. The counsel for the defendant called on him to deliver it to them for their inspection. He refused, unless they would read it in evidence, or permit him to do so. They then called upon the court to require the district attorney to deliver them the paper, but the court refused to interpose. Whether it was proper to submit the paper to the grand jury, or for them to read it or take its contents into consideration, cannot be determined on the writ of error in this case. It was in fact received by them, and doubtless by their direction delivered to the district attorney as a part of the minutes of their proceedings, and as such he was entitled to the possession of it under the provision contained in the 30th section of the act relative to the return and summoning of grand juries, their powers and duties. (2 R. S. 606, ed. of 1836.) It was not a paper filed with the court, or over which it had any direct control. It was a part of the testimony of the witness by whom it was signed; and as such its contents might have been proved in the ordinary way. The defendant might have subpoenaed a grand juror, under the 31st section of the act last quoted, and given notice to the district attorney to produce the papers, and if he had refused to do so, they might have given parol evidence of its contents. They might also have applied to the district attorney for the paper, or a copy, previous to the trial, and on his refusal to deliver one or the other to them, might have applied to the court, to postpone the trial. And if the court had been satisfied that the possession of the paper, or a copy, was material for the defence, they would doubtless have directed such postponement. (The People v. Vermilyea, 7 Cowen, 369.) As the defendant’s counsel did not use due diligence to obtain the paper, or to authorize them to give evidence of its contents, they cannot avail themselves here of any objection arising from a refusal of the court to order the district attorney to deliver it to them during the trial. There are other valid objections to such order, but it is unnecessary to state them here.
The last, and by far the most difficult, point raised by this *227 bill of exceptions, is as to the admissibility of the question propounded to Dr. Smith. On this point I at first entertained some doubt; but my brethren have been very clear that the question was admissible. The witness testified that he had examined Maria Bodine professionally, and as an overseer of the poor, in the latter part of May and the beginning of June, 1847. He was then asked, by the district attorney, the following question: “ In consequence of your examination, and the opinion you formed, and in consequence of a communication confidentially made to you as a physician, by Maria Bodine, as your patient, cotemporaneously with your examination, what steps did you take ?” The counsel for the defendant thereupon called on the counsel for the prosecution to state the object of this question. They answered that in order to rebut the presumption arising from the lapse of time between the alleged abortion and the finding of the indictment, and the assumption that the complaint was the offspring of conspiracy, or perjury, on the part of Maria Bodine, they wished to show by the witness that he wrote to the mayor of the city of New-York, and was the cause of the prosecution being instituted. The counsel for the defendant then objected to the question, but the objection was overruled by the court. The witness answered that he wrote to the mayor of New-York on the 2d of August, 1847. And that on the 6th of that month officer Bowyer called on him, and they went together to see Maria Bodine, and that he accompanied her to New-York, on the 12th of August: The preface to the question was clearly wrong, but that related to the form or manner of asking it, and not to the substance of the question. In such cases, the objection should be specified, for the obvious reason that the party asking the question may (if he acquiesces) ask it in a correct form. As a general rule, it is improper for a party to put a leading question to his own witness, but if the other party does not raise the objections specifically at the time, it will not avail him on a writ of error. It is not in fact one of his exceptions. In this case the defendant’s counsel asked what it was intended to prove, and when that was stated, raised their objection, thereby confining it to the *228 question itself, and in effect waiving any objection of a formal' character. The only question now is, whether the evidence called for was competent, under the circumstances of the case. The delay in preferring the charge was calculated to excite some suspicion as to its truth; and that would lead to an impression that the witness might have some sinister motives in making it at all. What was said by the counsel as to their object in asking - the question, was based upon the supposition that the testimony might give rise to those unfavorable inferences. If there were circumstances which would have a tendency to rebut those presumptions, they were relevant, and it was manifestly proper that they should be proved. It often happens that there has been something in the conduct of a witness preferring a true complaint, apparently inconsistent with the main charge; and in such cases it is the constant practice to adduce explanatory evidence. Such testimony is often given on trials for rape, where the prosecutrix made no outcry at the time of the perpetration of the outrage, or was tardy in making the complaint. That is merely giving evidence of one fact to qualify or explain another, and then both are equally relevant.
Upon the whole, we are all of opinion that there was no error which could have at all prejudiced the defendant, and the judgment of the court below must be affirmed.