State v. Watson.

━━━━━━━━━━━━━━━━

STATE OF MAINE *vs.* JONATHAN WATSON.

*Indictment. Evidence. Practice. Exceptions.*

In an indictment under R. S., c. 119, § 1, charging the respondent with setting fire directly to a dwelling-house which was thereby burned, it is not necessary to allege an intent to burn it; *aliter*, when the respondent is charged with setting fire to another building whereby a dwelling-house is burned.

When an indictment contains several counts, each relating to the same transaction and charging but one substantive offence, with different degrees of aggravation, the legal effect of a verdict of guilty upon one or more of the counts is an acquittal on the counts upon which the jury are silent.

If the jury return a verdict of guilty upon one of the counts in an indictment and are silent upon another count which is identical with it, the court will disregard the other count, or direct the prosecuting attorney to enter a *nol pros.* upon that count, and the case will proceed to judgment on the verdict.

Upon the trial of the respondent on an indictment for setting fire to and burning a dwelling-house, it may be material for the State to prove upon the question of motive, that he held a policy of insurance thereon at the time of the alleged burning.

State *v.* Watson.

When in such case the preliminary evidence introduced without objection shows that the respondent then held such a policy but had surrendered it before the trial to the agent of the company who was out of the jurisdiction of the court, parol evidence of its contents is admissible to show the respondent's motive for setting the fire.

By R. S., c. 82, § 94, the record of a previous conviction of the respondent of a criminal offence is admissible to affect his credibility though it is not the record of a conviction for an infamous crime.

A letter written to a third person purporting to enclose a deed with directions to such person to deliver the deed to the grantee upon a specified contingency, is not admissible in evidence without proof or an offer to prove that it was received.

If the counsel for the government in his argument to the jury transcend his legitimate province, the counsel for the respondent should interpose his objection at the time, or the point will not be available.

The court will not sustain exceptions to refusals to give special instructions when their substance has already been given in the charge, or in any other form, or where the judge before the end of the trial substantially and correctly states the law upon the points raised by the excepting party.

Nor will exceptions be sustained on account of abstract errors in instructions when no injury could have resulted therefrom.

ON EXCEPTIONS to the ruling of the justice of the superior court for this county.

INDICTMENT for arson in setting fire to the barn of the defendant, in Scarborough, on the night of the twentieth of January, 1873, whereby it and his adjoining dwelling-house were consumed. The ownership of these buildings is thus stated in the first count and that the barn was set on fire for the purpose of destroying the house in which certain persons then lawfully were. The second count alleges the mode of setting the fire in the same way, but avers that these buildings were the property of Simon Jordan, and omits the statement of any persons being lawfully in the house.

The third count charges setting fire to the dwelling-house of Simon Jordan whereby it was burned, but does not say that this was so intended by the prisoner, nor that anybody was in it. The fourth count avers the direct setting fire to the house owned by the defendant, in which divers persons were, with intent to destroy it, and that it was thereby destroyed.

The fifth count declares that the prisoner "feloniously, wilfully,

and maliciously did set fire to the dwelling-house of one Simon Jordan" whereby it was burned; but contains no other statement of intention or that any one was in it. The jury returned a verdict of guilty; by the consent of the prosecuting officer, and at the request of the prisoner's counsel, the court asked them upon what counts they based this finding, and they said "upon the second and third counts."

After the respondent had testified in his own behalf, the government were permitted to introduce a certified copy of the record of his conviction before the court in Penobscot county at its February term, 1868, upon an indictment for an assault with intent to commit rape; to which his counsel took exception: and, against objection, the prosecuting officer was allowed to prove by parol the contents of a policy of insurance obtained by Watson upon the property destroyed, which policy had been surrendered by him, after the fire and before trial, and carried out of the State by the general agent of the company that issued it.

Simon Jordan had given a conditional deed of the premises, of which the buildings burned were part, to Jonathan Watson; disagreement arose between these parties while both were occupying the estate; suits followed; and, finally, their whole controversy was referred to Sewall C. Strout, Esq., who awarded that Watson should reconvey the property to Jordan. A question arose as to whether or not the deed made in pursuance of this award had been delivered at the time of the fire, Mr. Jordan's counsel testifying that he had it in his hand in December, 1872, and considered it then delivered, while the prisoner claimed that it was left with the referee to be delivered on the first of February, 1873, and that he signed a written agreement to that effect, which he proposed to introduce in evidence but the court excluded it. It read thus:—

"PORTLAND, December 18, 1872.

S. C. STROUT, Esq., Portland:

Dear Sir: The deed of myself to Simon Jordan of Cape Elizabeth, I herewith deposit with you for safe-keeping for

me until February 1, 1873. Unless otherwise ordered by me, you will please deliver said deed to said Jordan, or his attorney, on said day.                                    JONATHAN WATSON."

There was no evidence that this letter ever came to the hands or knowledge of Mr. Strout, to whom it is addressed. The deed was not finally surrendered to Jordan, and placed on record, till February.

The respondent's counsel also excepted to the admission of Mr. Jordan's testimony as to threats and abusive language used by the prisoner toward him; and that when he (Jordan) vacated the house he intended to return thither, and so left his furniture in it; and to the statement of an old member of the fire department as to the appearance of hay after it has been burned in a mass; Stanford, a government witness, upon cross-examination said that Benjamin Dyer, also a witness for the prosecution, told him that he (Stanford) was summoned to swear that Watson had said to him (Stanford) that "when he (Watson) left the premises, he would leave nothing but the soil;" to which Stanford replied to Dyer, that it was false, Watson never made any such statement to him. Dyer was then recalled and swore to having a conversation with Stanford on the marsh road in Scarborough in which he mentioned that Watson had made the foregoing declaration: the defence objected to this evidence.

In his charge the judge remarked that "it is the duty of the jury and the court to pass upon the case as they find it to exist, in accordance with the law; and the law itself recognizes the possibility that a sentence should not be carried out to its full effect, but that a pardon or change may be granted;" that stress had been laid upon the fact that innocent men had sometimes been convicted; conceding that nothing can be worse than for an innocent man to be convicted of a capital offence, that consideration applies only to an innocent person, and not to one proved guilty beyond a reasonable doubt; and it should never be invoked as a shield to protect such criminals; "while, on the one hand, nothing can be worse than the conviction of an innocent man, what can be worse

in its effect upon society than for a man, guilty in fact of notorious crimes, to walk our streets with impunity ?"

After alluding to other topics, such as the prisoner's threats, his declaration as to his own losses by the fire, and whether these were true or false; his statement of the time when he released Jordan's cow, compared with the moment of her being seen in Mr. Libby's yard a half-mile distant, the allowance to be made for his position in the case, the nature of the offence and purpose of punishment, &c., &c., the judge said :—"These are pertinent and legitimate considerations for the jury—not as bearing on the guilt or innocence of the accused, which must first be determined strictly according to the evidence in the case—but if you find your minds incline to the decision that the crime is proved beyond a reasonable doubt, then these considerations are pertinent in urging you to render a verdict according to your judgment no matter what the penalty may be." To which instructions and observations the respondent excepted.

No evidence of the prisoner's character was introduced, but the prosecuting officer, in his closing argument, attacked it, and suggested his capability of doing the act wherewith he was charged, from the nature of the crime of which he had previously been convicted. No objection was interposed to this line of argument at the time.

Various requested instructions were refused; only one was relied upon at the hearing upon the exceptions, and that was this : The county attorney argued that the question of guilt lay between the witness, Dyer, and the respondent; that an acquittal of Watson convicted Dyer, and amounted to a conviction of all the government witnesses of perjury ; thereupon the court was requested to instruct the jury that "it was not a question between Benjamin Dyer and this respondent ; the only question is the guilt of the accused, whether he committed the crime charged or not, and an acquittal would not convict anybody of perjury ;" having already stated to the jury that they must be satisfied beyond a reasonable doubt of every fact essential to establish Watson's guilt before he could be convicted, the judge declined to give this instruction.

*Howard & Cleaves* and *Nathan Webb*, for the respondent.

The second and third counts, upon which the defendant was convicted, set out no offence under the statutes of this State. The second says that "by the kindling of the fire so set to said barn, the dwelling-house was set fire to, burnt and consumed," not stating that any one was in it; neither does the third state what the fact was in this particular.

The third and fifth counts are identical in legal effect; Watson was convicted on the former, and, by the silence of the jury, acquitted on the latter; *State* v. *Phinney*, 42 Maine, 384; *Girts* v. *Commonwealth*, 22 Penn., 351.

A verdict thus repugnant is too fatally defective to sustain any judgment. *Baron* v. *People*, 1 Parker's Cr. Cas., 246; *State* v. *Sutton*, 4 Gill, (Md.,) 497; *King* v. *Hayes*, 2 Ld. Raymond, 1521. Stanford only testified what Dyer told him in Portland; the latter was then allowed to state their conversation in Scarboro'; both being government witnesses. *Commonwealth* v. *Buzzell*, 16 Pick., 154; *Commonwealth* v. *Starkweather*, 10 Cush., 59; *Commonwealth* v. *Welsh*, 4 Gray, 535.

Only the record of conviction of infamous crime is admissible to impeach the credibility of a witness. See R. S., of 1857, c. 82, § 89, and more recent statutes. The paper signed by Watson should have been admitted to show Mr. Sweat's mistake as to the time when the deed was delivered, and why he looked at it in December.

*Charles P. Mattocks*, county attorney, for the State.

Dyer's testimony was properly admitted because Stanford swore that he never made the alleged statement. 1 Green. on Ev., § 462; *Ware* v. *Ware*, 8 Maine, 53. The letter to Mr. Strout was never delivered; nor anything done in accordance with its terms. It was simply a letter Watson once thought of sending but did not send. *Pope* v. *Machias Co.*, 52 Maine, 535; *Hackett* v. *King*, 8 Allen, 144; *Burke* v. *Savage*, 13 Allen, 408. Objection to the line of argument adopted by me is made too late. *Commonwealth* v. *Cunningham*, 104 Mass., 545.

The requests were mostly denied because correct instructions upon the same subject had already been given and these were superfluous, even if right. The prisoner cannot be aggrieved that he was not convicted upon more than two counts. *State* v. *Whittier*, 21 Maine, 347 ; *State* v. *Burke*, 38 Maine, 574; *Commonwealth* v. *Tuck*, 20 Pick., 366.

In all cases where silence upon a count has been held equivalent to an acquittal, such count has been different from those on which a verdict of guilty was found. *State* v. *Phinney*, 42 Maine, 384.

The second and third counts are sufficient ; one sets out the setting fire to a barn with intent to burn a dwelling-house, and the other a setting fire to the house itself, which implies the intent. R. S., c, 119, § 1 ; *State* v. *Hill*, 55 Maine, 365. The verbal criticism on the use of the word "kindle" is not worth noticing. A finding upon a single count and silence as to the rest, is sufficient in law. *Jones* v. *Kennedy*, 11 Pick., 125 ; *French* v. *Hanchett*, 12 Pick., 16. And judgment may properly be rendered on that count. *U. S.* v. *Stetson*, 3 Woodb. & M., 164.

DICKERSON, J. This case is presented on exceptions to the order of the presiding justice overruling the motion in arrest of judgment, his exclusion and admission of testimony, his instructions to the jury, and refusal to give certain instructions requested by the defendant.

Several causes are assigned in the motion for arrest of judgment, but they may all be conveniently considered under two general heads.

I. It is alleged that no statute offence is set out in the second and third counts upon which the respondent was convicted. We do not think that this objection is well taken. The second count charges the setting fire to a barn with intent to burn a dwelling-house which was thereby burned. This is clearly an offence under the statute. So, also, is the charge in the third count of setting fire to, and burning a dwelling-house, though no intent is

alleged. In the one case there may have been an intention to burn the barn, and no intention to burn the dwelling-house. Hence the necessity of alleging an intention to burn the dwelling-house. In the other case the setting fire to the dwelling-house and burning the same, necessarily imply an intention to burn it; hence there is no necessity for alleging this intention. R. S., c. 119, § 1; *State* v. *Hill*, 55 Maine, 368.

II. The motion in arrest of judgment further alleges that there is a repugnancy in the finding of the jury, since they convicted the accused upon the third count, and were silent upon the fifth, which is identical with the third; their silence upon the fifth, as is argued, being, in legal effect, an acquittal of the accused upon that count. In other words, it is argued that the jury convicted and acquitted the accused upon the same substantive charge.

The authorities are not in harmony as to the legal effect of the silence of a jury in respect to one or more of the counts in an indictment when they return a verdict of guilty upon the other counts. Some of them hold that such silence renders the verdict void; some that it operates as an acquittal of the accused upon such count or counts; others that the court will disregard the counts upon which the jury are silent, and proceed to judgment upon those on which a verdict is returned; others, still, that the verdict will be sustained, and the court will order a *nol pros* of the counts on which the jury omitted to return a verdict. The better opinion would seem to be that, as the accused is entitled to a verdict upon each and every substantive charge in the indictment, where the indictment contains several counts, each relating to the same transaction, and charging but one substantive offence, with different degrees of aggravation, the legal effect of a verdict of guilty upon some of the counts, is an acquittal upon the other counts. This doctrine was held in *State* v. *Phinney*, 42 Maine, 384.

This principle applies to the first and fourth counts in the indictment but not to the fifth, as that is identical with the third upon which the verdict of guilty was rendered. The jury cannot

be presumed to have, at one and the same time, convicted and acquitted the accused upon the same charge. The more reasonable view of the verdict in this respect is, that having found the accused guilty upon the third count, they did not deem it necessary to convict him again of the same charge set forth in another count of the indictment. The judgment and punishment under the verdict found being the same as it would have been if the jury had returned a verdict of guilty upon the fifth count also, the accused could not have been prejudiced by their omission to return a verdict upon that count. Besides, there can be no question but a judgment upon the existing verdict would be a bar to any indictment based upon the fifth count. Our conclusion is, that the ver dict is to be regarded as an acquittal of the respondent upon the first and fourth counts, and that the fifth count being the same as the third upon which he was convicted, should be disregarded, or that, at least, a *nol pros* should be entered upon that count, and that the case should proceed to judgment upon the second and third counts. *State* v. *Phinney, ante*; *State* v. *Coleman,* 3 Ala., 14; *Sweeney* v. *State,* G. & M., 576.

The objection of the defendant that the record of his former conviction of a criminal offence was improperly admitted is obviated by R. S., c. 82, § 94. Under that statute the record of a previous conviction of a criminal offence is admissible to affect the credibility of the respondent in a criminal case, although the conviction may not have been for an infamous crime. That statute had its origin in the outgrowth of the modern idea that the sources of evidence ought to be enlarged. It would be contrary to the letter and spirit of this statute to restrict its application to records of conviction for infamous crimes as claimed by the counsel for the respondent.

Nor is the objection to the admission of parol evidence of the contents of the policy of insurance upon the buildings and personal property of the respondent destroyed by the fire, well taken. It was important for the State to show that the property was insured in order to establish the respondent's motive for setting the

fire. The preliminary evidence introduced without objection, shew that the defendant held such a policy, and that he had surrendered it before the trial to the agent of the company who was out of the jurisdiction of the court. Under these circumstances we see no objection to the admission of parol evidence of the contents of the policy with respect to the buildings and other property of the respondent destroyed by the fire, as bearing upon the question of motive. 1 Greenl. on Ev., § 558; *Kidder* v. *Blaisdell*, 45 Maine, 461.

It is further argued in defence that the presiding justice erred in excluding the writing of December 18, 1872, signed by the respondent, in which it is stated that the deed of the premises, Watson to Jordan, was to be deposited in the hands of S. C. Strout, Esq., for safe keeping for the grantor, till February 1, 1873, when it was to be delivered to the grantee. The government had introduced evidence tending to show that the deed was delivered previously to that time, when this writing was offered.

The respondent was convicted upon the second and third counts in the indictment which charged him with burning the buildings of Jordan. Whether they were his property or not depended upon whether the deed from Watson to him had then been delivered. The writing offered is not an *ex parte* declaration of the grantor, but was made with the knowledge and consent of the grantee's counsel, and for the very purpose of preserving the evidence of the agreement of the parties in respect to the time of the delivery of the deed; and yet by the exclusion of the writing, human memory was allowed to take its place. We do not think that the writing offered is inadmissible because of the failure of the evidence to show that it ever reached Mr. Strout, since that fact could not affect the intention of the parties in respect to the delivery of the deed. The materiality of this evidence becomes apparent when it is considered that the fire occurred before the time fixed in the writing for the delivery of the deed. Upon this ground the exceptions must be sustained.

The other exceptions to the rulings of the presiding justice in

excluding or admitting evidence do not appear to have been very much relied upon by the counsel, and cannot be sustained.

The objections to the charge of the presiding justice, for the most part, allege that it is metaphysical, argumentative, or unduly prejudicial to the respondent in its inferences, suggestions, illustrations, or assumptions. But we are satisfied that the exceptions upon this branch of the case cannot be sustained upon any of the grounds therein alleged. The justice undoubtedly, in a case of this importance, deemed it his duty to comment somewhat upon the evidence, that he might thereby afford the jury some guide toward the discovery of the truth. This is always a delicate, but in some cases, an indispensable duty of the court. The remark of the justice, so severely criticised by the counsel for the respondent, that considerations growing out of the enormity of the offence and the duty of protecting society, were pertinent to urge them to render a verdict according to their judgment, no matter what the penalty might be, if their minds should be inclined to the decision that the crime charged was proved beyond a reasonable doubt, was simply an admonition to the jury to do their duty fearlessly, and without undue sympathy for the prisoner—a caution by no means gratuitous, considering the skill, ability and learning of his counsel. There is no intimation that such "considerations" should supply the place of satisfactory proof of guilt, or that "inclination" of mind should be allowed to supersede conviction.

The authorities cited by the county attorney in his able and exhaustive argument, show that the exceptions cannot be maintained on account of the refusal of the presiding justice to give the requested instructions. If the county attorney in his argument to the jury transcended his legitimate province, the counsel for the respondent should have interposed their objection at the time, that the court might have set the matter right before the jury. Not having done so, it is too late to raise that question. *State* v. *McAllister*, 24 Maine, 139 ; *Commonwealth* v. *Cunningham*, 104 Mass., 545.

The charge of the presiding justice shows that he substantially gave all the requisite instructions upon the other requests. *Dunn* v. *Moody,* 41 Maine, 239 ; *People* v. *Lahman,* 2 Barb., 219 ; *Shorter* v. *The People,* 2 N. Y., 192. *Exceptions sustained.*
*Verdict set aside and*
*a new trial granted.*

APPLETON, C. J., WALTON and DANFORTH, JJ., concurred.

BARROWS and VIRGIN, JJ., concurred in the result.