NATHAN O. GREENFIELD, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANT IN ERROR.

*Witness — contradiction of — when allowed — Challenges — review of decision as to — evidence upon — Impression as to guilt — when it does not render a juror incompetent.*

A witness may be contradicted not only as to his testimony in chief, but also as to matters drawn out on his cross-examination, material to the issue, especially when the contradictory statements tend to discredit, vary, modify or explain the testimony given by him on his direct-examination.

In reviewing the decision of a trial court upon a challenge to the favor, the appellate court has the power, and it is its duty, to pass upon the facts *de novo*, from the evidence adduced before the court below.

Since the passage of the act of 1873, by which challenges both for principal cause and for favor are to be tried by the court, it is not necessary to reiterate, upon the challenge for favor, the evidence taken upon a challenge for principal cause on the same ground; but the court is to decide upon the testimony given on both challenges.

Where, upon a challenge for favor, it appeared that the person challenged had a preconceived impression as to the guilt of the accused, based upon statements which he had read in an account of a former trial, which statements might or might not be supported by the evidence, but he believed he could, if sitting as a juror, render a fair and impartial verdict on the evidence, notwithstanding such impression, *held*, that the challenge was properly overruled.

WRIT of error to the Court of Oyer and Terminer, held in the county of Oswego, to review the conviction and sentence of the plaintiff in error for murder in the first degree.

*S. C. Huntington*, for the plaintiff in error.

*J. J. Lamoree*, district attorney, for the defendant.

SMITH, J.:

The record in this case returned to the writ of error, presents a conviction of the plaintiff in error for murder in the first degree committed upon his wife, Alice Greenfield, at Orwell, in the county of Oswego, in October, 1875. The bill of exceptions contains numerous exceptions (over three hundred it was said on the argument), taken on behalf of the prisoner to rulings of the court on questions of the admissibility of evidence. We have examined them all carefully, and are constrained to say that in our judgment they are without merit. Many of them are exceptions taken to rulings of the court admitting certain questions put to the prisoner's witnesses, Richard Greenfield, the prisoner's father, Betsey Ann Greenfield, his mother, and Ezra Greenfield, his brother, on cross-examination, for the purpose of laying the foundation for proving statements made by them contradictory of their testimony. Another large class of the exceptions taken by the prisoner's counsel, relates to rulings of the court admitting questions put to witnesses called by the prosecution, for the purpose of making the proof of contradictory statements, the foundation of which had been laid as above stated. The ground taken by the counsel for the plaintiff in error, in support of both of the classes of exceptions above referred to; is that the questions admitted by the rulings excepted to, related to new, immaterial and irrelevant matters, in respect to which the witnesses could not be contradicted or impeached. Without taking up the questions separately, it is enough to say, that in view of the testimony given by the prisoner's witnesses above named, on their

direct examination, and in view of the circumstances of the case as shown by the testimony received before the prosecution rested, the matters to which the questions objected to related, were not collateral, but bore with some degree of weight upon the main issue. The bearing of some of them, indeed, was slight, but our attention has not been called to a single one which in our judgment did not relate with more or less directness to some circumstance which, either as a part of the *res gestœ*, or as showing the position of the witnesses, or their opportunities for observation, or their bias or want of recollection, tended to throw light upon the transactions which constituted the essential elements of the case. Whatever tends to contradict or qualify some previous part of the testimony of the witness to whom the question is put is not collateral. (2 Phil. on Ev. [4th Am. ed.], with Cow. & Hill's notes, p. 970, citing 1 Exch. R., 102, per ALDERSON, B.)

It is further objected, however, by the counsel for the plaintiff in error, that in some instances the matters in respect to which evidence of contradictory statements was received, were elicited on the cross-examination of the witnesses sought to be contradicted, and not on their examination in chief. Such was the fact, but we do not understand that any rule of evidence was violated thereby, the matters as to which the witnesses were contradicted being pertinent to the issue. A witness may be contradicted not only as to his testimony in chief, but, also, as to matters drawn out on his cross-examination, material to the issue, especially where the contradictory statements tend to discredit, vary, modify or explain the testimony given by him on his direct-examination. The rule here stated is not new. It is laid down in Wharton's Law of Evidence (§ 552,) and authorities are there cited in support of it. To those may be added the case of *Thomas* v. *David* (7 Carr. & Payne, 350), cited by Phillips in his treatise on evidence (vol. 2 [4th Am. ed.], with Cow. & Hill's notes, p. 971).

It is further urged by the counsel for the prisoner that his client was prejudiced by the fact that numerous questions were allowed to be put by the counsel for the prosecution to witnesses called for the defense, as to what they had said or sworn to out of court, concerning new and collateral matters, in respect to which no attempt was made to contradict them. As to all such questions,

the answers of the witnesses were conclusive ; the extent to which a cross-examination on collateral matters shall be allowed is very much within the discretion of the court, and there does not appear to have been an abuse of discretion in this case.

Exceptions were taken by the prisoner's counsel to rulings of the court upon challenges to two of the jurors, which remain to be considered.

Augustus H. Betts, a juror, was challenged by the prisoner for principal cause, as having formed and expressed an opinion in relation to the guilt of the prisoner, and after having testified in substance that he had formed and then had an opinion or impression as to the guilt or innocence of the prisoner, and also, that notwithstanding such opinion or impression, he could take the case and decide it fairly according to the evidence, the challenge was overruled. The juror was then challenged to the favor, and on his being further examined, that challenge also was overruled by the court. The testimony given by the juror on the trial of the challenges will be more fully stated presently.

It is enacted by chapter 475, of the Laws of 1872, that the previous formation or expression of an opinion or impression in reference to the circumstances upon which any criminal action at law is based, or in reference to the guilt or innocence of the prisoner, or a present opinion or impression in reference thereto, shall not be a sufficient ground of challenge for principal cause, to any person who is otherwise legally qualified to serve as a juror upon the trial of such action, provided, the person proposed as a juror, who may have formed or expressed or has such opinion or impression as aforesaid, shall declare on oath that he verily believes that he can render an impartial verdict according to the evidence submitted to the jury on such trial, and that such previously formed opinion or impression will not bias or influence his verdict, and provided the court shall be satisfied that the person so proposed as a juror does not entertain such a present opinion as would influence his verdict as a juror. The proposed juror, in this case, swore substantially in compliance with the statute, thus rendering himself a competent juror, so far as the challenge for principal cause was concerned, provided the court was satisfied as in the statute is required. We think in this state of the case no exception can be well taken to the overruling of the

challenge for principal cause, that is, that the proposed juror was not legally disqualified from sitting as a juror in the case.

Upon a challenge to the favor another question arises, and that is, whether the juror in fact stands indifferent between the parties and is not the subject of any bias or prejudice in relation to the guilt or innocence of the prisoner which may interfere to any extent with his deliberations in the jury box. The act of 1872 has no reference to challenges to the favor, but in the following year, an act was passed (Laws of 1873, ch. 427), which provides that "all challenges of jurors, both in civil and criminal cases, shall be tried and determined by the court only. Either party may except to such determination, and upon a writ of error or *certiorari*, the court may review any such decision the same as other questions arising upon the trial." Before the passage of that act, a challenge to the favor was to be determined by triers, unless both parties consented that it be tried by the court, and the decision of the triers, or of the court, as the case might be, was conclusive and could not be reviewed. Now, however, a challenge to the favor as well as a challenge for principal cause must be tried by the court, and the determination of the court thereon may be reviewed.

In reviewing the decision of the trial court, upon a challenge to the favor, the appellate court probably has the power, and it is its duty, to pass upon the facts, *de novo*, from the evidence. The Court of Appeals has recently said in a civil case, that the rule that when there is conflicting evidence, and when there is any evidence to sustain the finding, it is error in the appellate court to reverse the judgment, is not applicable in any case where the appellate court has a right to review the facts. (*Godfrey* v. *Moser*, 66 N. Y., 250, 252.) But the court was careful to guard and limit the rule there laid down, by the further remark that, "in reviewing the facts, proper deference should be awarded to the judgment of the referee" (or court) "in cases of serious doubt, upon conflicting evidence, especially when it is probable that the appearance of the witnesses, or their manner of testifying, was, or might have been, controlling in determining the questions; but," continues the court, "these cases are rare, and, in general, it is the duty of the appellate court to take the responsibility of examining the evidence and determing the facts for itself." The remarks above quoted, although made in a civil case, are perti-

nent to the present inquiry, since the act of 1873 relates to civil and criminal cases alike. But the case of a challenge to the favor is peculiarly one in which the appearance and manner of the witness, especially if, as in this case, the only witness is the juror himself, always may be, and frequently is, controlling in determining the question to be tried. It is competent for him to testify as to his impressions and opinions, the degree of their strength, and his ability to lay them aside, and to render an impartial verdict upon the evidence; and, when the challenge is submitted upon his testimony alone, I venture the opinion, in which I think all who have had experience in presiding at jury trials will concur, that a careful observation of the appearance and manner of the proposed juror, under the scrutiny to which he is subjected, is of very great importance, and may frequently furnish evidence respecting his indifferency, quite as satisfactory as the words uttered by him on the stand. The wisdom of the legislature, in transferring the grave responsibility of determining challenges to the favor, from laymen to experienced judges, is not to be discussed in the courts. While the statute stands, the proper administration of justice, and the due enforcement of the law, in criminal cases, requires that the determination of a trial court, upon a challenge to the favor, shall not be reversed upon any thing short of a reasonable conviction upon the part of the appellate court, grounded upon the evidence, that the determination was erroneous.

The answers given by the proposed juror, Betts, upon the challenge for principal cause, as well as those given upon the challenge to the favor, were before the court when the latter challenge was decided, and, in our opinion, are to be considered by us upon this review. Before the act of 1873, when challenges for principal cause were decided by the court, and those for favor by triers, there was an obvious reason for holding that testimony addressed to one tribunal could not be considered by the other (*Cancemi* v. *The People*, 16 N. Y., 501, 505), unless by consent, as seems to have been the case in *Friery* v. *The People* (2 Abb. Ct. Ap. Dec., 215; S. C., 2 Keyes, 424). Now, however, both challenges being tried by the court, it would be a mere waste of time to reiterate upon the challenge for favor, the testimony taken on the challenge for principal cause; and we think it is to be presumed that the challenge for

favor, being taken subsequently to the challenge for principal cause, was determined upon the testimony given on both challenges, when, as in this case, it does not appear that any objection was taken to that course, or that a different course was adopted, and counsel on both sides have argued before us the question relating to the challenge for favor, on all the testimony of the juror.

It appears from the bill of exceptions that the juror Betts testified, in substance, that, at the time of a former trial of the case, he read a newspaper account of the evidence given by the prosecution, or a part of it, and he heard the matter considerably discussed by others; that, from what he heard and read, he formed an impression as to the guilt of the prisoner, which he still retained; that such impression was founded upon the assumption that the statements which he read were true; and that notwithstanding such impression, he believed that if he should sit in the case he could render a fair and impartial verdict upon the evidence. If that were all of his testimony, it could not be doubted that the determination of the trial court upon the challenge for favor, as well as the challenge for principal cause, was well warranted, and should be affirmed.

But the counsel for the plaintiff in error contends that, in view of other statements made by the juror during his examination, the court erred in holding him to be indifferent. After the juror had stated the formation of the impression above mentioned, he was asked, " Have you any impression or opinion now ? " He answered, " I think I have." Q. "And you have such impression, opinion or belief as to his guilt that it would take evidence to remove it, have you not ? " A. " Yes." Q. " So you would not stand indifferent or unbiased as between the parties ? " A. " I don't know how that would be." Having testified, in reply to questions by the district attorney, that the effect formed on his mind was an impression and nothing more, and that he believed, notwithstanding the impression, he could render an impartial verdict upon the evidence, he was asked by the prisoner's counsel, " What you mean by that is this, isn't it : that if you were sworn as a juror, you would endeavor to weigh the testimony impartially and render a verdict accordingly ? " A. " Yes." Q. " That is all you mean by that ? " A. " That is all I mean, yes." Q. " But you do not mean to take back what

you have already said, that you would enter upon your duties as a juror, if sworn, with an impression or belief as to his guilt?" A. "I should have the impression, as I said before." Q. "And that would require evidence to remove?" A. "Yes." Subsequently, the court put to the juror this question: "Do you think that your previously formed opinion or impression would not bias or influence your verdict at all?" A. "I think it would not." Q. "You could take the case and decide it fairly according to the testimony, without reference at all to any opinion you might have had?" A. "Yes."

It seems to us that these answers properly considered in connection with all the testimony of the proposed juror, do not substantially vary what he had previously stated. He nowhere says that he had formed an opinion. He had formed an impression, but it was hypothetical, based upon the assumption that the statements he had read were true. When he speaks of an impression which it would require evidence to remove, the natural import of his language is that if the statements on which his impression was based should be borne out by the evidence, further evidence would then be required to remove the impression. His uncertainty as to whether he would stand indifferent, was simply that arising from the doubt whether the evidence would bear out the statements on which his impression was based. His answer upon that point showed very clearly that he had no fixed opinion. (*Stout* v. *The People*, 4 Park. Cr. R., 132, *per* T. R. STRONG, J., 137.)

In short, the substance and import of his testimony was that he had a preconceived impression, based upon statements which might or might not be supported by the evidence, but that he believed he could, if sitting as a juror, render a fair and impartial verdict on the evidence, notwithstanding such impression. It is not to be forgotten that the juror was a layman, and presumably not acquainted with the technical legal signification which has been given to some of the words used in the questions put to him. His language is to be construed as it would ordinarily be understood by laymen of common intelligence sitting as triers. And I cannot forbear to quote an eminently wise and practical remark made by Justice E. DARWIN SMITH in the case of *The People* v. *Stout* (4 Park. Cr. R., 71, 124), which, although uttered on the review of a determination of a challenge for principal cause, is entirely pertinent to the present

case : " Human language," said the learned judge, " is so imperfect at best as a representative of thought, and written language so much more liable to misrepresentation and misconstruction, when considered and reviewed by itself remote from the time and occasion when it was used, and there is also such a liability to misunderstand or misquote a witness or juror, that it is altogether more safe and just to the juror and the cause of truth, to trust to the impression made at the time by the testimony upon those who heard it, noticed the manner, tone, appearance and personal peculiarities of the juror while under examination and subjected to the watchful scrutiny of the court, counsel and jury in the court room, than to any written or reported statement of his testimony afterwards."

Before the act of 1873, although the determination of the triers on a challenge for favor was conclusive and could not be reviewed, cases frequently came up for review, upon exceptions to rulings of the court on questions of evidence before the triers. In such cases, when the appellate court had before them all the evidence submitted to the triers, they sometimes expressed an opinion as to the correctness of the decision of the triers upon the question of indifferency. In repeated instances the courts have expressed an opinion as to what kind and degree of evidence will properly sustain a challenge, and it may be profitable to refer to some of them.

A marked case of that description is *The People* v. *Honeyman* (3 Den., 121), in which the former Supreme Court took occasion to explain what they had said on the subject of challenges to jurors in *The People* v. *Bodine* (1 id., 281). In Honeyman's case the court, after adverting to their language in the Bodine case, proceeded as follows : " If we have not been sufficiently explicit already, recent events render it proper to add, that although evidence which tends to show a bias on the mind of the juror must be received, it by no means follows that the juror should be set aside by the trier for slight causes. If, for example, the juror has heard, or has read in a newspaper, that the prisoner is guilty of the crime laid to his charge, and has given credit to the statement, the evidence of those facts must be received ; and the triers must not be instructed, as matter of law, that they are not at liberty to reject the juror. Still, it would not be a wise or judicious act on their part to set aside the juror, unless they found that he had such a

settled opinion concerning the prisoner's guilt that he could not disregard what he had heard or read out of court, and render his verdict on the evidence alone." * * * "It is well known that jury duty in the city of New York" (the original venue in Bodine's case), "is somewhat burdensome; and persons summoned as jurors for a trial which is likely to occupy a good deal of time, will be very willing to say, if it can be done truly, that they have heard or read statements, and formed opinions concerning the prisoner's guilt. But a little sifting would probably show, and well-instructed triers would undoubtedly find, that they were not disqualified to sit as jurors. Intelligent and right-minded men, when they enter the jury-box, know how to lay aside what they have heard and read out of doors, and pronounce their verdict upon the evidence, and upon that alone."

Another instructive case is that of *The People* v. *Lohman* (2 Barb., 216, 222). One Cortelyou, called as a juror, was challenged to the favor by the defendant's counsel. On his examination he stated that he had an opinion unfavorable to the general character of the defendant, and that he had formed and still retained an impression that if what he had read in the papers was true, she had committed the act charged. He was then asked by the counsel for the people, on his cross-examination, against an objection and exception by the defendant, whether, if he should be sworn as a juror, he would disregard what he had heard or read out of court, and render a verdict on the evidence. The juror answered that he would endeavor to do so to the best of his ability. The triers decided against the challenge, and the juror was then sworn. The defendant was convicted, and on error to the Supreme Court, the exception above stated was passed upon and the court asid, "It is not, in general, sufficient to justify the triers in setting aside a juror, as not indifferent, that he has formed an unfavorable opinion of the character of the accused. If it should be, notorious offenders could not be tried at all. Whether it would be a valid objection that he had read a report of the facts in the public papers, and had thereby imbibed an impression against the accused, must, of course, depend upon the strength of such impression. If that should be weak, it would not disqualify the juror. If, however, it should be so strong that it would have any influence in forming his opinion on the trial,

then he would not stand indifferent, and should be rejected. The juror should be able to decide on the evidence alone. Now, there is no one better acquainted with the strength of the impression upon the mind of the juror than himself. Indeed, all the information given to the triers upon the challenge, is generally from the juror. He was in this case, the sole witness. The question to which objection was made, was proper to test the strength of the juror's impression against the defendant. The answer was such as any honest man would have made, and could not have operated to the defendant's prejudice. The triers were bound to give it such weight as they thought right, and they very properly decided that the challenge was not true."

In *O'Brien* v. *The People* (36 N. Y., 276, 278), there was a conviction for murder in the first degree. A juror, Bleekdorn, was challenged for favor, and the challenge having been tried by the court, without objection, and overruled, the defendant's counsel argued, on review, that the challenge was improperly overruled. The Court of Appeals passed upon the question. BOCKES, J., delivering the opinion of the court, said, "The juror was called and challenged to the favor; on being examined, he stated that he had a faint recollection of hearing of the occurrence through the newspapers at the time, but formed no opinion or positive decision as to the guilt of the prisoner; that the newspaper statement left no particular impression on his mind as to the guilt of the person named, except as a newspaper statement; that he believed a homicide had been committed, and by the person named. This is the substance and import of his examination. It is plain that the challenge was not supported. It did not appear that the juror was prejudiced against the prisoner, or had formed an opinion as to his guilt or innocence from what he had heard or read, and he was clearly competent, unless general impressions obtained from reading newspaper accounts of the daily events occurring in our midst will disqualify the reader from judging impartially of them when brought under examination on sworn evidence in a court of justice. It has been often held that impressions so made do not disqualify a person from sitting as a juror. (2 Barb., 222; 1 Park., 302; 2 id., 16; 4 id., 132, 135–37; 5 id., 414, 423–25.) Were a different rule to obtain, the most intelligent and upright portion of community

would be generally excluded from the jury-box, leaving cases of the highest importance to individuals and to community to be determined by the most ignorant and least competent."

In the cases cited, the evidence in support of the challenge was quite as strong, to say the least, as in this case. In the present case the trial court undoubtedly came to the conclusion that, although the juror had formed an impression as to the guilt of the prisoner from what he had heard and read, the impression was hypothetical merely, and the juror was able, notwithstanding its existence, to decide the case fairly and impartially upon the evidence, and upon that alone. Looking at all the testimony given by the juror, and the apparent intelligence and candor evinced by his answers, and considering the fact that the trial court had the opportunity of observing his manner and appearance on the stand, we are of the opinion, in the light of the judicial opinions above referred to, that the determination of the trial court upon the challenge to the juror for favor cannot be said to have been erroneous. To hold otherwise would be to adopt a rule for the application of the statute of 1873, which would virtually annul its provisions, and continue the mischiefs they were intended to prevent, by excluding from the jury-box the fittest to serve, and by admitting to its grave responsibilities and duties those only who are found to be unbiased and neutral, mainly because they cannot or do not read.

A like exception was taken by the prisoner's counsel to the overruling of the challenge for favor, to the juror Jennings. The evidence in his case is so similar to that in the case of Betts, that it is unnecessary to consider it separately. We are of the opinion the ruling upon that challenge, also, was not erroneous.

The conviction and judgment should be affirmed.

MULLIN, P. J., and TALCOTT, J., concurred.

Judgment and conviction affirmed, and proceedings remitted to Oswego Oyer and Terminer to carry sentence into execution.