## E. B. Brown v. The State.

No. 1932.   Decided October 16, 1912.

**1.—Arson—Insufficiency of the Evidence—Circumstantial Evidence.**

In a case of circumstantial evidence, the rule is that the circumstances must be sufficiently cogent to exclude every reasonable doubt except the guilt of the defendant, and where, upon trial of arson, the evidence was entirely circumstantial and defendant pleaded an alibi, and there was a want of sufficient evidence that he burned the alleged house, the conviction could not be sustained.

**2.—Same—Secondary Evidence—Insurance Policy.**

Where, upon trial of arson, the State attempted to show that the alleged house was burned for the purpose of getting the fire insurance thereon, the insurance policy was the best evidence, and before secondary evidence could be introduced, the loss of the policy should have been shown or that it could not be produced, and the fact that defendant took the witness stand subsequently and testified about the matter does not cure the error.

**3.—Same—Rule Stated.**

Where testimony has been erroneously admitted, and the defendant is thereby called upon to meet such testimony, the error of the admission of such illegal testimony is not thereby cured.

**4.—Same—Evidence—Letter—Confession.**

Where, in a trial for arson, the State was permitted to introduce a letter of the defendant while in jail to one of the State's witnesses, and the qualification of the trial judge that the letter was used to show that said State's witness was unfriendly to the defendant did not relieve the matter of the objection that the same was inadmissible either as a direct or indirect confession, there was reversible error.

**5.—Same—Imputing Crime to Another.**

Where, upon trial of arson there was evidence that third parties removed certain property from defendant's house without his consent, and the burning of said house occurred in defendant's absence and he denied that he had anything to do with such removal of said goods or the burning of said house, the court should have instructed the jury to acquit the defendant if they did not believe he was concerned in the removal of said goods as the State claimed.

Appeal from the District Court of Bowie. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of arson; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*F. M. Ball,* for appellant.—On question of introducing letter written while defendant was under arrest in jail: Robertson v. State, 54 Texas Crim. Rep., 21; Brown v. State, 55 id., 572; Gaston v. State, 55 id., 270; Calloway v. State, 55 id., 262; Collins v. State, 57 id., 410; Fry v. State, 58 id., 169; Berry v. State, 58 id., 291; Rodriquez v. State, 58 id., 397; Lott v. State, 58 id., 604; Askew v. State, 59 id., 152.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of arson, his punishment being assessed at five years in the penitentiary.

The State proved by some witnesses, among them J. H. Brown, that the appellant carried some household goods from his residence in the town of Texarkana to J. H. Brown's residence in the country—two and a half or three miles distant. Appellant met this testimony by numerous witnesses to the effect that he did not have the property hauled from his house, but that it was hauled without his knowledge or consent and that it was hauled by J. H. Brown. It is unnecessary to give a detailed statement of either view of the case. The goods are supposed to have been taken from the house on the evening or night of the 13th. If hauled by J. H. Brown they were taken in the daytime about 3 or 4 o'clock—if hauled by employes of appellant they were taken about 10 o'clock at night. Each transaction is said to have occurred on the evening or night of the 13th of December, 1910. The house was burned about 9:30 o'clock on the night of the 14th of December. It seems to be an undisputed fact that appellant was not in Texarkana on the night of the 14th, having left there for Spirit Lake, twenty-five miles distant, and was at Spirit Lake at 8:15 or about that time on the evening of the 14th of December. The State undertook to meet this alibi by showing that appellant could have set some slow process of burning the house and went away to be absent when, in fact, it was burned. There is also evidence that arrangements to go hunting had been made previous to this time with the proprietor of a hotel or hunting lodge at Spirit Lake. The proprietor of the hotel testified to the effect that appellant reached the station at about 8:15 and the hotel about 8:45 and that this was twenty-five miles from Texarkana. In fact, it seems to be undisputed that he left Texarkana on the train at about 7 or 7:15 and arrived at the point of destination at Spirit Lake about 8:15 and the hotel about 8:45. The State introduced no evidence of the fact that appellant did burn

the house, but two insurance men testified to the fact that he could
have fixed a slow process by which the house could have been burned
in his absence. A day or so after the burning—it was testified by
some of the parties who were about the house—they smelled the odor
of kerosene oil. J. H. Brown testified that appellant and two negroes,
Isom Graves and another one they called "Dad," came to his house
later than 10 o'clock with a piano, a davenport and perhaps some
other pieces of furniture and stored it in J. H. Brown's residence.
He says he did not want to have anything to do with it as he thought
there was something wrong about the matter. The two negroes, Isom
and "Dad," testified they hauled the goods from the residence of ap-
pellant and appellant went with them to J. H. Brown's residence.
The appellant proved by quite a number of witnesses that Brown
went to his house and hauled the goods away. Some of the witnesses
saw J. H. Brown at the residence of appellant loading the goods—
others testified that they saw J. H. Brown hauling the goods away
and that they talked with him at the railroad track where he stopped
on account of a passing train at which time he, J. H. Brown, had
the goods in the wagon. This was in the daylight on the evening of
the 13th of December. It seems that in July or August prior to the
burning, appellant's wife left home without notification to appellant
and subsequently was divorced from him and that on the evening she
left in his absence she had the household goods hauled off and stored
at her mother's, some distance in the country and this seems to have
been near the residence of J. H. Brown. Appellant recovered these
goods and had them hauled back to his residence. Appellant testified
he had nothing to do with moving the goods and that he did not know
for some time where the goods were after being moved from his resi-
dence, but finally located them at J. H. Brown's. He also testified
to the fact that he was not at home at the time of the burning and
the first information he had in regard to it was on the night of the
15th when he returned from his hunting excursion, having received
this information from Mrs. Caudle. Mrs. Caudle sustains him in this
evidence. He denied having anything to do with hauling the goods
or ever having made any contract with J. H. Brown or the negroes
who hauled or stored the goods. This, perhaps, is a sufficient state-
ment of the facts to elucidate the questions relied upon for reversal.
It may be further stated, however, that the indictment contained two
counts—the first charging appellant with having burned the house,
and the second with having been an accomplice to the burning through
some unknown party whom he advised or procured to burn it. The
conviction was obtained under the first count, both having been sub-
mitted to the jury.

1. It is contended the evidence is not sufficient to support the con-
viction. We are of opinion that this position is well taken. There is
no evidence, as we understand this record, that appellant burned the

house. In fact, it may be stated, as an undisputed fact, that appellant was not present at the time of the burning, but was twenty-five miles away. While the State introduced evidence that the appellant could have burned the house by means of some slow process which had been set to burn the house in his absence, there is a want of evidence of the fact that he did burn it, either by this means or any other means. In a case of circumstantial evidence the rule is, the circumstances must be sufficiently cogent to exclude every reasonable doubt, except the guilt of the defendant. Suspicion is not sufficient. The fact that there were many ways by which a house could be burned in the absence of an accused is not sufficient evidence to show that he did, in the absence of some fact or facts tending to show that he did in fact burn the house by the means by which it is supposed he could have done so.

2. A bill of exceptions shows that the State introduced a witness named Rose, who testified that he was a fire insurance agent, and as such agent of the fire insurance company in Baltimore, Maryland, he issued an insurance policy on the house that was burned, to the National Loan & Investment Company, it having a deed of trust on said house. After the fire he paid this policy to the National Loan & Investment Company. Appellant objected that this was not the best evidence. The State then proved by him that when he paid said policy it was turned over to him and that he canceled it and returned it to the home office in Baltimore, Maryland, and that he supposed it was there. Appellant's objection was then overruled and the witness testified as above stated. The bill is signed this way by the judge: "The bill prepared by the defendant was not [correct] and this is prepared by the court and presents the facts fairly. After this the defendant took the stand; defendant proved by himself on his direct examination each policy of insurance on the house at time it was burned, the amount of each, the aggregate amount of all of them; the amount paid on each policy and the value of the property lost and the amount of damage he sustained over and above all insurance on it." The rule seems to be settled beyond any question, as we understand the law, that the best evidence in matters of this sort must be introduced and here it would have been the policy itself. It is also a well settled rule that in order to introduce secondary evidence in matters of this sort, it must be shown that the papers connected with the matter should be produced, or, in the absence of the production of the papers, to admit secondary evidence, proper diligence should have been shown to obtain these papers. In the absence of such showing the secondary evidence is not admissible. There is no showing made by the State, as shown by this bill, except by the statement of the witness that when he canceled the policy he sent it to the home office in Baltimore, and he supposed it was still there. We are of opinion that this is not a sufficient showing. It does not show how he sent them, or that they were ever received at the home office or anything further than

that he canceled them and sent them. Nor is there any showing made that they could not have been produced at this trial. The statement of the judge that the defendant took the stand subsequently and testified about the matter does not relieve the matter, but rather intensifies it. As was said in the recent case of Moore v. State: "No rule seems to be better established than the one that where testimony has been erroneously admitted, and the defendant is thereby called upon to meet such testimony, that the facts that he does introduce evidence to meet it does not cure the error. That ought to be considered as elementary." When the State introduced this evidence it was a fact in the case as introduced, which defendant was called upon to meet and the fact that he did meet it as best he could did not cure the original error. However erroneously testimony may be admitted against an accused, it does not cure error for him to meet that testimony with the best evidence attainable, nor does he waive the error on the part of the court in admitting such testimony originally. This is elementary.

3. Another bill recites that while appellant was in jail he wrote a letter to J. H. Brown. While testifying in his own behalf, on cross-examination the letter was introduced in evidence over the objection of the defendant. The letter is as follows:

"Boston, Texas. 4-12-1911. Mr. J. H. Brown, R. F. D. Boston Road, Texarkana. Dear Sir:—I have been wanting to see you awfully bad but I could not see you at all. Now as I cant see you any other way I am going to ask this favor and it is the only one that you can possibly do me. If you can come down here next Sunday you can do me a very great favor. Jno I am going to look for you as I don't believe you will disappoint me I will pay you what your expenses are when you get here. Don't disappoint me under no circumstances as every body has disappointed me. I thought that I would get out of here, but I haven't been able to do so yet. Call for Mr. Thom Watlington and he will admit you to my sell. You can come down on the 7.35 A. M. o'clock train and go back on the 1.30 the same evening. Don't fail me for I am having to do every thing myself. Yours very truly." The bill shows that the letter was identified by defendant as having been written by him. It was then admitted in evidence over the objection of the appellant. The bill recites as incident to the objection, under the court's permission, the defendant's attorney was allowed to and did ask the question as to where he, the defendant, was at the time the letter was written and he answered that he was, at the time, in the county jail of Bowie County, Texas, his confinement extending from March 20, 1911, to September 2, 1911. The reasons urged as objections were that the letter was incompetent, inadmissible, prejudicial and hurtful to the defendant, written while he was in jail and was not a written instrument executed before an officer authorized to administer an oath and sworn to by the defendant after being duly warned as provided by

law. The bill further recites that after the letter had been read to the jury by State's counsel, defendant immediately moved the court to withdraw the said letter from the jury's consideration and to instruct them not to consider it at all, for the reason that the defendant had urged to its introduction as shown by the foregoing. This was overruled and the letter was allowed to go to the jury and was considered - by them as a part of the evidence in the case. The court signs this bill with this explanation: "The letter was not an admission or confession and was not within the purview of the statute. Defendant had testified on direct examination that J. H. Brown was unfriendly to him and State offered letter to show this was not true." An inspection of the statement of facts will show that the qualification in regard to the unfriendliness of Brown, as testified by defendant, is not sustained. If we take this qualification of the bill of exceptions as true, it does not relieve the matter if the letter was inadmissible by reason of it being an admission either directly or indirectly, or that it could be treated as a confession. We are of opinion this letter should not have gone to the jury. J. H. Brown was the receiver under the State's theory, of the property taken from appellant's house the day before it was burned with the statement. on his part that he thought there was something wrong. This letter was introduced for some purpose and whether the receiver of the letter was friendly or unfriendly, would not lessen the effect of it before the jury as against the defendant. Whether Brown was friendly or unfriendly to appellant, the jury would regard this letter, evidently, as having been written to get in touch with the witness Brown in regard to his connection with the goods that were taken from the burned house. The jury would naturally, and any candid mind would infer that the letter was written to Mr. Brown that defendant might talk with him about the case and to a certain extent, the recognition of the fact that he had moved the goods to Brown's house preparatory to a subsequent burning and to save what he could of the property from the fire, and in the light of subsequent events, to obtain the insurance upon the secreted property as having been destroyed in the fire.

4. It was also urged in the court below and is here assigned as error, that the court erred in failing to instruct the jury affirmatively that if they believed J. H. Brown and another white man, a stranger, whose name was unknown to them, did in fact, late in the evening of the second day preceding the fire, in the absence of the defendant and without the defendant's knowledge or consent remove the piano, davenport and other furniture of the defendant from the house of the latter, to return a verdict of acquittal of the defendant. We believe, this or a similar charge should have been given. Quite a number of witnesses testified to the fact that Brown and another unknown party carried the goods away from appellant's house on the evening of the 13th in the absence of the appellant; and, appellant

testifies that he knew nothing of it and did not know where the goods were until some time after they were removed. The removal of this furniture was relied upon by the State as a serious criminating fact of the defendant, and if he was particeps criminis in the removal of it, or had it done, it would be a pregnant fact against him. This he denied by himself and his witnesses. This matter should have been called to the attention of the jury and the appellant by timely exception raised this question in the court below. Upon another trial this issue should be submitted to the jury by proper instruction.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*