## L. D. ARENSMAN v. THE STATE.

### No. 4084.    Decided May 24, 1916.

### Rehearing denied June 21, 1916.

#### 1.—Arson—Requested Charges—Practice on Appeal—Bill of Exceptions.

Where all the bills of exceptions to the refusal of defendant's requested charges were qualified and explained by the trial judge when he allowed them, and defendant accepted them with this action of the court, he is bound thereby.

#### 2.—Same—Evidence—Hearsay—Conspiracy.

Where, upon trial of arson, defendant objected to the testimony of a witness, who testified as to what defendant's wife told said witness with reference to burning the alleged building, which occurred a short time before the commission of the offense, but the testimony in the case showed that there existed between defendant and his wife a conspiracy to burn the building in question and that they were acting together in such common design, and the court in his charge instructed the jury properly limiting this testimony to the question of conspiracy, and told them that they could not consider it, unless they believed from all the evidence that there was such a conspiracy, there was no reversible error.    Following Smith v. State, 46 Texas Crim. Rep., 267, and other cases.

#### 3.—Same—Conspiracy—Husband and Wife—Rule Stated.

If either the husband or wife is on trial for the completed offense, proof of the acts or declarations of either, though made in the absence of the other, is admissible against the other if done or made pending the conspiracy and in furtherance of the common design.    Following Smith v. State, 48 Texas Crim. Rep., 233.

#### 4.—Same—Evidence—Declarations of Co-conspirators—Rule Stated.

When a conspiracy is shown, proof of the acts and declarations of co-conspirators is admissible to show the common design, purpose and intent of all the conspirators, whether such acts and declarations were made before or after the formation of the conspiracy, or whether the same were made before or after the defendant on trial entered into the conspiracy.

#### 5.—Same—Evidence—Co-conspirators—Rule Stated—Husband and Wife.

Proof of what was said and done by any of the conspirators pending the conspiracy and in furtherance of the common design is admissible against the one on trial, though said or done in his absence; and this is not compelling the wife to testify against her husband.

#### 6.—Same—Evidence—Letters—Post Cards—Husband and Wife.

Where, upon trial of arson, the court admitted in evidence testimony as to the contents of a letter and postal of defendant's wife to the witness requiring him to remove his goods from the alleged burned building; a proper predicate having been laid that the letter and postal were lost or beyond the jurisdiction of the court, there was no reversible error.

#### 7.—Same—Evidence—Confession—Practice in District Court.

Where, upon trial of arson, the court excluded certain written confessions of the defendant because they had been induced to be made by the promise of a suspended sentence, but afterwards admitted a certain oral confession which was made after defendant was out on bond and had consulted counsel, and was voluntarily made, there was no reversible error.

#### 8.—Same—Argument of Counsel—Husband and Wife—Principal.

Where, on trial of arson, State's counsel alluded to the fact that the defendant had failed to introduce his wife as a witness, there was no reversible error, although she was implicated as a principal.

**9.—Same—Misconduct of Jury—Defendant's Failure to Testify.**

Where defendant objected to the verdict claiming misconduct of the jury in discussing his failure to testify, and the court heard all the jurors testify on the subject and settled the question of fact against the defendant, which he was authorized to do, there was no reversible error. Following Lamb v. State, 75 Texas Crim. Rep., 301, 169 S. W. Rep., 1158.

**10.—Same—Objections to Court's Charge—Practice on Appeal.**

The statute requires that the objections to the court's charge shall be made before it is read to the jury, and that such objections shall specifically point out claimed errors or omissions therein, and that it is too late to do so after the trial. However, when considered they present no reversible error.

**11.—Same—Principal Offender—Indictment—Rule Stated.**

A principal offender may be charged directly in the indictment with the commission of the offense, although it may not have been actually committed by him, and it is never necessary to the validity of an indictment to allege the acts which make him a principal.

**12.—Same—Charge of Court—Entire Charge Considered—Rule Stated.**

It is elementary that the whole charge of the court must be considered when objections are made to excerpts or short paragraphs thereof. However, when considered, there is no reversible error, as the charge of the court was full, fair and proper.

Appeal from the District Court of Wise. Tried below before the Hon. F. O. McKinsey.

Appeal from a conviction of arson; penalty, five years imprisonment in the penitentiary.

The opinion states the case

*Ratliff & Spencer* and *Frank J. Ford,* for appellant.—On question of misconduct of jury: Walling v. State, 59 Texas Crim. Rep., 279, 128 S. W. Rep., 624; Reyes v. State, 55 Texas Crim. Rep., 422; Portwood v. State, 71 Texas Crim. Rep., 447, 160 S. W. Rep., 345; Stone v. State, 184 S. W. Rep., 193.

On question of admitting declarations of wife: Choice v. State, 52 Texas Crim. Rep., 285; O'Quinn v. State, 55 Texas Crim. Rep., 18, 115 S. W. Rep., 39; Newton v. State, 62 Texas Crim. Rep., 622, 138 S. W. Rep., 708.

On question of letter and postal card: Campbell v. State, 62 Texas Crim. Rep., 561, 138 S. W. Rep., 607; Miller v. State, 65 Texas Crim. Rep., 302, 144 S. W. Rep., 239.

On question of argument of counsel: Harville v. State, 113 S. W. Rep., 283, 54 Texas Crim. Rep., 426.

On question of court's charge of conspiracy: Bodine v. State, 174 S. W. Rep., 609, 76 Texas Crim. Rep., 314.

On question of court's charge on principals: Yates v. State, 42 S. W. Rep., 296; Davis v. State, 55 Texas Crim. Rep., 500.

On question of indictment: Arismendis v. State, 41 Texas Crim. Rep., 377; Powell v. State, 131 S. W. Rep., 590.

On question of court's refusal of charge: Burkhalter v. State, 184 S. W. Rep., 221.

C. C. *McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of arson and assessed the lowest punishment.

The State's theory and contention was, which was denied by appellant, that he himself, or with his wife as a principal, committed the offense, and before the offense was committed they had agreed and conspired to commit it. The evidence was largely circumstantial. Some testimony was introduced which tended to show, if it did not positively do so, that appellant made admissions sufficient to show his guilt. There was no conflict in the testimony on any material point. Neither appellant nor his wife testified, and he introduced no testimony other than two witnesses who testified to his good reputation in another county where he lived some year and a half or two years before he was charged with this offense.

The State proved, and the jury were clearly authorized to find and believe, that in August, 1914, appellant's wife and another lady bought out a millinery stock and fixtures in Decatur, paying therefor $50 cash and executing three notes for $50 each for the balance. This partnership was dissolved in January following, Mrs. Arensman taking all the stock and fixtures and assuming all indebtedness. She then took out a policy for $300 insurance on the stock. She later made purchases on credit and also made sales on credit. She was unable to collect for sales she had made on credit. Appellant signed some of the notes with her which she gave for the purchase of some of the stock.

About, or shortly prior to, January 1, 1915, Mrs. Arensman rented from Mrs. Beard the second story of a storehouse in the center of a solid block of storehouses, north of the square in Decatur, which fronted south—the courthouse being in the center of the square. This second story was cut up into four rooms. She conducted her millinery business in the two front rooms and rented the rear two to Mr. Inman, who occupied these two rooms with his family until the latter part of May, when they removed to Oklahoma. Inman's stepfather and mother part of the time occupied these two rooms with his family. When he removed his family he and his stepfather both left part of their household goods stored in these two rooms. There was an entrance to this second story by stairs from both the front and rear, the rear on an alley. The fastening of the back door from the rear stair was by an inside bar across the door underneath the door knob or latch. Inman first went to Oklahoma, where he got work, the last of February, leaving his family in said rooms in Decatur. He got sick the last of March and returned to his rooms with his family, where he was sick in bed for two weeks. This would put him there sick from the last of March to about the middle of April. While Inman was there sick Mrs. Arensman was in to see him. They got to discussing the frequent fires in Decatur, and in the conversation Mrs. Arensman told him she could not collect money for what she had sold and had some notes coming due which she was going to have to pay; that if times got dull she would burn up and

get the insurance before she would "go broke." Just at this time appellant himself applied to the insurance agents for a policy of insurance in addition to the $300 policy his wife then had on the millinery business and procured the issuance of a policy for an additional $200, which was issued to her on the millinery stock. The two policies at that time additional one, $200. Shortly prior to the fire, Mrs. Arensman tried and continuously until the fire aggregated $500, one, $300, and said to sell her business to other milliners, who inspected her stock at the time with the view of purchasing. She then asked $300 therefor. The prospective purchasers would not have been willing to have given her more than $150 or $175 therefor.

There can be no question but that said millinery stock and the store in which it was located were purposely set on fire and wilfully burned on the night of June 7, 1915, some time between 9 and 11 o'clock, most of the testimony showing that it was near 11 o'clock. The appellant, his wife and family lived together in a residence in the south part of Decatur. On the day preceding the fire that night, appellant several times passed up and down before an adjoining store to said building which was burned that night. Appellant and his wife, just after dark on the night of the fire, which must have been near 9 o'clock, were seen to come down the back stairway into the alley from said second-story where said millinery business was conducted, which was much later than they ordinarily left said millinery store. Again that night, about twenty-five or thirty minutes before the fire, they were seen together to come out of said alley back of said store building, cross the street running north from the northwest corner of the square and start as if they were going north. Instead of doing so, they immediately turned and went south on the sidewalk on the west of said street until they got near the corner, then crossed that street diagonally, got on the sidewalk on the front of the block of buildings north of the courthouse and continued directly to the front stair where said millinery stock was. They disappeared up this stair but were not seen when they came out. The next time they were seen was from one to three minutes before the fire was discovered, when they were met on the sidewalk on the west side of the square about the middle of the block going south towards their residence. Two parties there met them. These two parties went north on this same sidewalk to near the northwest corner of the square, cut across the square to the sidewalk on the north, in front of said building and millinery business. Just as they passed the millinery store they heard some noise which attracted their attention and remarks. They, however, proceeded east to near the corner of the square, when they again started diagonally across the street to the store on the northeast corner, when they stopped, and upon looking back, discovered that said millinery store was on fire. They immediately ran back to this building, upstairs and broke in one of the doors of said millinery store, when they discovered that a whole lot of paper and millinery goods were heaped in a pile against, or near, the partition wall between the two millinery rooms, and on fire. The smoke was then dense and the

heat considerable. They fled and gave the alarm of fire, when a large crowd at once gathered, the fire company appeared and succeeded in later extinguishing the fire before it consumed the entire building, though it consumed the roof, partition wall, considerable of the floor of the second story and most, if not all, of the millinery stock.

The next day, the city marshal, C. C. Lewis, and appellant were in said second story of said building. The city marshal asked him if he had any enemies, or something like that, that would burn him out. He said he didn't know that he had a single one. The city marshal then asked him if he was not in the building the night before, immediately preceding the fire. He at first said he was not. The city marshal said to him: "We are both Odd Fellows. Don't lie to me. I know you was in this building." Appellant replied: "I will admit that I did lie. I was in the building." That he had come up to get something,—a paper or record

Mr. Beard, the husband of Ella Beard, who owned said store building, the next day after the fire went from Fort Worth to Decatur to see about it. That evening he met appellant and asked him if he had any insurance. Appellant replied: "They tell me they are going to have an investigation, and if they are going to do that, rather than bother about the insurance, I will let the whole thing go."

A few days after the fire and after appellant had been arrested and gave bond, he talked with Mr. Dixon and said to him that his attorneys had told him if the Odd Fellows would keep quiet, he could beat this— the witness didn't remember whether he said "case" or what it was. The witness told him the Odd Fellows could not help him. He then said if they—called three names, Mr. Wasson, Mr. Birchfield and Mr. Ben Watkins, and while he did not call the witness's name, yet linked him with these three other parties—would not tell what they knew, or would keep quiet, it would be all right. The witness said to him that he had never confessed to him anything about burning the building, and he didn't want him to. Appellant said he was not afraid of Wasson, but did not know about Birchfield and Watkins and asked the witness to see them and speak to them about it and ask them not to tell.

When the alarm of fire was given and parties gathered at the building to put out the fire, it was found that the said back door at the head of the back stair in the alley was unfastened.

Appellant requested a large number of special charges which were refused. It is unnecessary to discuss them separately We have examined them all. None of them should have been given. Wherever they cover any matter which was proper to submit, the court in his main charge properly submitted the question. He has several bills to the admission of certain testimony. Some of them embrace substantially the same character of testimony. It will not be necessary to take each up separately. What we will say as to one covers the others along the same line. Every one of his bills were qualified and explained by the judge when he allowed them. Some he, in effect refused to allow.

Appellant accepted them with this action of the court and is bound thereby, as all the authorities so hold.

In his first bill he objected to that part of Mr. Inman's testimony, wherein he testified what Mrs. Arensman said to him while he was sick, which is substantially above given. The bill, as allowed and approved by the court, shows that he objected to that testimony only on the grounds that it was hearsay, not in his presence; that there was no evidence of a conspiracy existing at the time; it was no part of the res gestae; was highly inflammatory and prejudicial to his rights, and was requiring his wife to testify against him. The court further stated, in effect, that he admitted this testimony because he thought it tended to throw light upon and explain the subsequent conduct of appellant and his wife, the other evidence tending to show they formed a conspiracy to burn the building in question and were acting together in such design. That at the time he admitted it, he expressly then verbally instructed the jury that it was admitted and to be considered by them and given whatever weight they thought it entitled to receive, and not consider it for any other purpose, unless they believed from all the evidence that there was a conspiracy or agreement between appellant and his wife to burn said building, and that he would further give them a written charge when he charged them, and that he later gave such written charge, properly limiting this testimony.

In our opinion, under all the authorities, this testimony was admissible. The testimony was amply sufficient to authorize the jury to believe and find that there was a conspiracy, or agreement, between appellant and his wife to burn said building and millinery stock, so that they could collect the said excessive insurance

Mr. Branch in his annotation of our Penal Code, under article 78, on principals (p. 352 et seq.), has collated many cases from this court and laid down propositions thereby established applicable to the questions herein. We will state and quote liberally from him. He says (p. 353): "If either the husband or wife            is on trial for the completed offense, proof of the acts or declarations of either, though made in the absence of the other, is admissible against the other if done or made pending the conspiracy and in furtherance of the common design. Smith v. State, 46 Texas Crim. Rep., 267, 81 S. W. Rep., 936; Smith v. State, 48 Texas Crim. Rep., 233, 89 S. W. Rep., 817." That such agreement, or conspiracy, is contemplated and provided for by our statutes themselves is fully shown by Judge Henderson in the opinion of the court in said latter case just cited

Again, Mr. Branch says (p. 352): "When a conspiracy is shown, proof of the acts and declarations of co-conspirators is admissible to show the common design, purpose and intent of all the conspirators, whether such acts and declarations were made before or after the formation of the conspiracy, or whether the same were made before or after the defendant on trial entered into the conspiracy," citing a large number of the decisions of this court, unnecessary to copy here, specifically holding what he announces as the rule.

Again, he says (p. 353): "Proof of what was said and done by any of the conspirators pending the conspiracy and in furtherance of the common design is admissible against the one on trial, though said or done in his absence." He cites a still larger number of the decisions of this court exactly in point and clearly establishing the rule stated by him. The statute prohibiting the State from making the wife testify against the husband has no application to this question or in this case.

Appellant prepared a bill, wherein he claimed he made some objections to the court's admitting Inman's testimony to the contents of a letter and postal from Mrs. Arensman to him notifying and requiring him to remove his and his stepfather's goods stored, as stated above. The court, in effect, refused the bill, stating that when said witness was testifying, appellant merely objected but assigned no ground therefor, and for that reason he made no ruling, and appellant did not except to the admission of the evidence or any ruling of the court or the failure of the court to make a ruling. However, he further states that if the proper objection had been made, he would have admitted the testimony, because the proper predicate had been laid for the secondary evidence, and that the letter and postal, if not lost, were in Oklahoma, outside of the jurisdiction of the court. As thus explained, this bill if not refused outright, shows no error.

As explained and allowed by the court, his fourth bill, to the exclusion of a letter from Mrs. Inman to Mrs. Arensman, shows no error.

Appellant's fifth bill shows he objected to the testimony of said Dixon. The court, in explaining and qualifying the bill, states:

"The only objection made to said testimony was that it embodied no confession or admission of the defendant and that theretofore defendant, Arensman, had made a written confession to the city marshal, Claude Lewis, and that said written confession had been excluded by the court because it was obtained by promising the defendant a suspended sentence; that there is no evidence that that promise made by an officer. was ever removed from the defendant's mind, and that there is no evidence to show that he was not laboring under the same impression, even when he talked with his lawyers.

"The defendant had, two or three days before his arrest on this charge, made a written confession of his guilt in this case in the presence of Claude Lewis, city marshal, and the county attorney.

"This confession was excluded by the court, because under the evidence submitted to the court in the absence of the jury, the court thought the same was induced to be made by the promise of a suspended sentence, said promise being made by the city marshal in good faith, however, he not knowing at the time that the suspended sentence law did not apply to convictions for arson. But the foregoing statements of the defendant were made some time after his arrest and after he was out on bond and had retained and consulted with attorneys, besides, there is nothing in the testimony or in any other evidence to indicate

that the statements of (to) the witness Dickson was not wholly voluntary."

Said Dixon's testimony was admissible. So was the testimony of the city marshal, Lewis, as to what appellant admitted to him, shown above.

Appellant has two bills to the argument of the county attorney. As explained and qualified by the court, neither shows any error. The county attorney clearly had the right, under all the authorities, to make an argument based upon the fact that the appellant had failed to introduce his wife as a witness for him. That she was implicated as a principal would not prevent such argument.

In his motion for a new trial, appellant attacked the verdict, on account of claimed misconduct of the jury in discussing his failure to testify. The court heard all the jurors testify on the subject. Their evidence is properly preserved in appellant's ninth bill. We have fully considered this bill and the evidence of the jurors. Excerpts from the testimony of several of them can be culled which would tend to support appellant's contention. Like excerpts can be culled from the testimony of these same jurors which would tend to disprove his contention. The testimony of many of the other jurors would also tend to disprove his contention. This, of course, raises a question of fact, which must be decided by the trial judge. He sees and hears the jurors and is better able to determine the truth of the matter than this court can possibly be from reading a statement of their testimony. We fully discussed this character of question in the opinion on rehearing in Lamb v. State, 75 Texas Crim. Rep., 75, 169 S. W. Rep., 1160, and in other cases, both before and since then. In our opinion, the district judge was clearly authorized to find as he did and deny a new trial, and under the circumstances and law we would not be justified in reversing this case· on that point.

Appellant made several objections to the court's charge. We have carefully considered them all. Our statute now, which has been uniformly followed by this court in many decisions, requires that the objections to the court's charge shall be made before it is read to the jury, and that such objections shall specifically point out claimed errors or omissions therein, and that it is too late to do so after the trial. In some instances, appellant now, after the trial, points out specifically what he claims are errors in the court's charge, but his objections which the trial judge passed upon did not point out and direct his attention then to these matters. Doubtless if they had he·would have changed his charge to meet the objections. Thus in his charge on principals, he quoted what is denominated a favorite charge on principals, quoted by Mr. Branch in section 685 of his Ann. P. C. Complaint is now made, but was not then made, that the court in the latter part included these words: "Whether in point of fact all were actually, bodily present or not," etc. Doubtless if the court's attention had been called thereto by appellant's objections at the time, he would have omitted this language. However, in this case, it would present no error, because the uncontradicted evidence would show that appellant was on the ground

if he actually committed the offense, and no intimation is made from the testimony that any other party, outside of him or his wife, committed the offense. He, in no way set up alibi, and the evidence in no way tended to show that he was a mere accomplice. So, in another place, where the court told the jury under what circumstances they could consider his wife's statements, etc., in his absence which tended to show by them a common design, purpose or intent to burn "said stock of millinery" when he should have there said "said building." This could in no way have misled the jury, for when the testimony was admitted, the judge specifically, orally charged them that they could thus consider it, only if it was shown that it was the common design, purpose and intent of both appellant and his wife to burn "said building." There can be no doubt that if the judge's attention had been called at the time to the fact that he had used said words, "stock of millinery," instead of "building," he would at once have corrected this. Besides the uncontradicted evidence showed that fire was set to the millinery, which necessarily burned the building.

It has always been held that a principal offender may be charged directly in the indictment with the commission of the offense, although it may not have been actually committed by him, and that it is never necessary to the validity of an indictment or to the introduction of evidence establishing that an accused is a principal that the indictment shall allege the acts which make him a principal. (Sec. 676, Branch's Ann. P. C., and cases there cited.)

It is elementary that the whole of the charge must be considered when objections are made to excerpts or short paragraphs thereof. Appellant excepted to some of the paragraphs of the court's charge, claiming that they were on the weight of the evidence. We think none of these objections are sustained by the record. We think the charge nowhere expresses any opinion as to the weight of the evidence or assumes that any given fact may be true; but, on the contrary, every issue of fact necessary to be submitted was left entirely to the jury for the jury alone to decide, and every fact essential to appellant's conviction by the charge was required to be believed by the jury beyond a reasonable doubt before they were authorized to convict.

We think the charge an admirable one and fairly and fully presented everything that was necessary or proper in the case. We see no necessity of quoting the charge, or any part of it, or of taking up separately appellant's objections thereto.

The judgment will be affirmed.

Affirmed.

HARPER, Judge, not present at consultation.

[Rehearing denied June 21, 1916.—Reporter.]