## SID HAIRE v. THE STATE.

No. 14083.   Delivered April 22, 1931.
Rehearing Denied June 10, 1931.

The opinion states the case.

*L. E. Keeney,* of Texarkana, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is arson; the punishment, confinement in the penitentiary for two years.

According to the averment in the indictment, the property was owned by appellant, was situated in a town, and was covered by policies of insurance. The building consisted of a barber shop and restaurant, a partition wall dividing the two places of business. There were two back rooms, one behind the barber shop and the other back of the restaurant. The fire originated in the room behind the restaurant. On May 24, 1930, at 3:15 a. m. the fire alarm was given. The record is silent as to the identity of the party turning in the alarm. After extinguishing the fire the fire marshal made a survey of the partially burned building. He found in the room back of the restaurant an ordinary alarm clock with some wires, coils and an extension cord on it. There was an electric light drop in the center of the room. The extension cord was connected with this drop. A resistance coil was so connected with the clock and extension cord as to create a spark. There were some rags saturated with gasoline near the resistance coil. The fire had burned through the walls near the clock. The minute hand of the clock was broken off and the hour hand was set at three o'clock. In the room behind the barber shop were some bottles and fruit jars containing gasoline. Some of these bottles were on the floor and others were on a shelf, a hair tonic bottle of gasoline was among those found in the room behind the barber shop. In the room back of the restaurant were some empty bottles. Entering the attic through a "scuttle hole" the marshal discovered a two-gallon ice cream container, a one-gallon oil can and two half-gallon fruit jars, all containing a quantity of gasoline. Approximately seven gallons of gasoline remained in the building after the fire. The resistance coil seems to have been taken from a Ford automobile. There was a quantity of paper in the house.

On the 6th day of February, 1930, appellant called W. E. Hatcher, local agent for the East and West Insurance Company of New Haven, Conn., to his place of business and advised him that he desired to buy fire insurance on his barber shop furniture, fixtures, building and dwelling. The dwelling was situated 6 or 8 feet from the barber shop. On the occasion of this visit Mr. Hatcher sold appellant a policy in the sum of $1,000 covering loss by fire on the barber shop and restaurant combined. A policy in the sum of $750 was taken on the furniture and fixtures in the barber shop. A third policy in the sum of $1,000 covered the dwelling. Appellant owed the building and loan association on his

property, and the policies were placed in their possession. After the fire they were cancelled by the insurance company.

Several months prior to the fire appellant had moved his refrigerator, kitchen cabinet and cook stove out of the restaurant. The place was then rented to Mrs. Waters who opened up a cafe and lunch room. She operated the place two months and sold it to Mrs. Mullins, who had some furniture in the place at the time of the fire. Mrs. Mullins had quit staying in the restaurant approximately a week before the fire. It appears that she had gotten work in some other place.

Sometime before the fire appelant and his family took up their dwelling in another part of town. Appellant testified on cross-examination that he had talked to the building and loan company about making a loan on his barber shop before he and his family moved. A few days before the fire the loan was turned down. It was appellant's purpose if he secured the loan to buy the place he had moved in. The evening before the fire appellant sold Preston Bobo two ceiling fans for $40. Bobo took these fans from the place of business the same evening. After the fire an old ceiling fan and some parts of blades of a ceiling fan were found in one of the back rooms. According to appellant's testimony he had only a small amount of gasoline in his place of business. On the evening after the fire appellant approached the fire marshal and said: "What is this I hear about you saying that I set this place on fire?" The fire marshal asked appellant who told him that he had made the statement appellant attributed to him. Appellant replied that "they" had told him about it all over town. The marshal then asked him to name one person who had told him. Appellant said that he could not remember who it was. Appellant's next statement to the marshal was that it was a frame-up. He also stated to the marshal that he carried $500 insurance on the restaurant, as well as $1,000 on the building and $750 on the barber shop equpiment. Appellant left his shop on the evening of the fire between 7:30 and 8:00 o'clock. According to his testimony he locked the front door of the barber shop, leaving Clifton Spear, Preston Bobo and a Mr. Thomas in the cafe.

Appellant denied that he burned the building, and declared that he had not aided anyone in constructing the machine which set fire to it. He testified that it would have taken more than $750 to have replaced his barber shop furniture and equipment. He further testified that he was making a good living out of his barber shop. On cross-examination he said that he did not remember having a conversation with Tommy Sheffield shortly before the fire about burning the house. We quote his testimony at this point on cross-examination as follows: "I did not tell Tommy Sheffield next morning that I thought the place would be in ashes this morning, and asked him why they did not do it. You asked me if I will say I did not do it, or I just don't remember,—I don't

remember it. No, Thomas is not Tommy Sheffield. Thomas is a different man entirely. Tommy Sheffield was not around there that following day. I do not remember Tommy Sheffield being around my shop there Tuesday. * * * You ask if I had not had that gasoline in my place for a long time,—I used a little gasoline in the shop but what I used was in a half-gallon fruit jar by the window. I did not have a five-gallon jug of gasoline there that I know of. There wasn't any five-gallon jug there that I know of. If there was a five-gallon jug there I do not remember it. * * * I do not remember that on Tuesday Tommy Sheffield walked into my place and poured some gasoline out in some fruit jars."

Appellant declared that he had not wanted any old junk fans, and that he had not had any old fans brought to his place of business prior to the fire.

The accomplice witnesses Clifton Spear and Preston Bobo testified in substance that they aided appellant in constructing the electric machine that burned the building; that about the time they finished the machine appellant's wife drove up and he left with the admonition that the boys should scatter the gasoline around; that prior to the fire he had offered them $100 each to help him burn the building; that after scattering the gasoline they closed the building and left; that after selling the new electric ceiling fans to Bobo, appellant stated that he wanted some old junk fans of similar motors placed in the building; that they secured two old junk fans and put them in the building before they carried the new fans out.

We are unable to reach the conclusion that the accomplice witnesses were not sufficiently corroborated. The law forbidding a conviction upon the uncorroborated testimony of an accomplice does not demand that there be direct evidence pointing to the accused as the offender, but merely requires that "there be other evidence tending to connect the defendant with the offense committed." Article 718, C. C. P.; Minor v. State, 108 Texas Crim. Rep., 1, 299 S. W., 422, 429. We quote from Minor v. State, supra, as follows: "Circumstances proved by credible witnesses may be as potent as direct testimony in tending to connect the accused with the commission of an offense. The state is not called upon to point to some single or isolated fact which in itself, unrelated to other proven facts, will be sufficient corroboration. It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which supply the test. If, by this rule, it appears on appeal that before the jury there was proof confirming the testimony of the accomplice to material facts tending to connect the accused with the commission of the offense, the law is satisfied. Underhill's Crim. Ev. (3rd Ed.), secs. 129 and 130; Meredith v. State, 85 Texas Crim. Rep.; 239, 211 S. W., 227; Wright v. State, 47 Texas Crim. Rep., 433. 84 S. W., 593; Huggins v. State,

85 Texas Crim. Rep., 205, 210 S. W., 804; Halbadier v. State, 85 Texas Crim. Rep., 593, 214 S. W., 349; Middleton v. State, 86 Texas Crim. Rep., 307, 217 S. W., 1046; Walker v. State, 94 Texas Crim. Rep., 653, 252 S. W., 543; Willman v. State, 99 Texas Crim. Rep., 259, 269 S. W., 801."

It is not necessary that the corroborating facts or evidence should be such as to show guilt independent of the evidence of the accomplice witness. The law demands that the corroboration with some degree of cogency tend to establish facts material and relevant which would authorize the jury to credit the testimony of the accomplice. Johnson v. State, 84 Texas Crim. Rep., 400, 208 S. W., 170; Millican v. State, 109 Texas Crim. Rep., 673, 7 S. W. (2d) 82. If the testimony of the accomplice witnesses should be eliminated entirely, we are not prepared to say that the circumstances would be insufficient to support the conviction. We summarize as follows: That the fire was of incendiary origin is made plain by the evidence. Appellant owned the building and had had it insured. He had moved to another part of town and desired to buy the property in which he had taken up his residence. He had made a fruitless effort to secure a loan upon his business property. A few days before the fire he had been advised that the loan could not be made. The evening before the fire he had sold two new ceiling fans from his barber shop and restaurant. Two old fans had been placed in the building, apparently for the purpose of misleading those who might investigate the fire. He charged the fire marshal with accusing him of burning his building but was unable to name any person who had told him such accusation had been made. He claimed that it was a frame-up, apparently before complaint had been lodged against him. He and the accomplice witnesses were apparently good friends, and were together on the evening of the fire. The preparation for the fire necessarily took some time. Gasoline was scattered about the building in bottles and found in the ceiling in larger containers.

Proof that the property was insured was required in support of a material averment in the indictment. It was in evidence that the insurance was in written policies issued by the East and West Insurance Company of New Haven, Conn. The policies had been issued by W. E. Hatcher, local agent of the insurance company. Prior to the time of the trial the policies had been cancelled and taken up by a special agent from the home office in New Haven, Conn. It appears from the qualification appended to the bill of exception that appellant had requested that the policies be taken up by the agent and cancelled. The policies were executed in duplicate by the use of carbon paper. They were not signed by appellant, only the signature of the insurance company appearing thereon. The witness testifying to the fact that the building was insured had issued the policies. The duplicates referred to were in his possession and had been kept by him after issuing the originals. Touching the

state's diligence to procure the originals, the court qualified the bill of exception as follows:

"Proof having been made that the originals had been taken from the place where they had been placed by the resident agent at the request of the defendant; and that their whereabouts was not now in fact known. It being the opinion of the court that the state having made proof of its lack of·knowledge of their whereabouts of the originals, after having made due inquiries as to where it would most likely be found, that the state· could not be required to follow in search of an inference that might lead to its discovery in another state and out of the jurisdiction of this state; whereupon the court permitted the introduction of the duplicate carbon copies and the witness to testify therefrom."

We deem the predicate sufficient to warrant the reception in evidence of the carbon copies of the policies.

Appellant sought to have the jury instructed, in substance, to acquit him if they had a reasonable doubt as to whether he was present when the house caught fire and burned. He now takes the position that under the facts he was not guilty as a principal, but that, if guilty at all, he could only be held as an accomplice. It is true that the evidence shows· that appellant was not present when the house caught fire and burned.. Moreover, it shows that the accomplice witnesses were not present at such time. However, it was shown, from the standpoint of the state, that appellant and the accomplice witnesses acted together in constructing the electrical machine, in placing the gasoline and other combustible material in the building and in setting the alarm clock for the hour that the· spark was to ignite the combustible material and set fire to the house. Although absent when the fire actually started, appellant and his companions had used indirect means to commit the offense. Article 68, P. C., provides: "If any one by employing a child or other person who cannot be punished to commit an offense, or by any means, such as laying poison where it may be taken and with intent that it shall be taken, or by preparing any other means by which a person may injure himself and with intent that such person shall thereby be injured, or by any other indirect means cause another to receive injury to his person or property, the· offender by the use of such indirect means becomes a principal."

We deem the article quoted applicable to the facts in the present case. There is no testimony in the record supporting the theory that appellant was an accomplice.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant insists that our original opinion regarding the receipt of secondary evidence to prove the contents of the insurance policies is out of harmony with the holding in Cox v. State, 100 Texas Crim. Rep., 172, 272 S. W., 490.

At the time of the fire the insurance policies were held by a building and loan association which was carrying a loan on the property. After the fire the local agent of the insurance company was directed by the home office of the company to cancel the policies, but the building and loan association declined to surrender them. The cancellation was effected by written notice sent by registered mail. Later the insurance company sent a special agent to secure the policies and they were turned over to him by the building and loan association. The home office of the insurance company was at New Haven, Connecticut. The local agent testified: "The last time I saw the original policy was when it was turned over to the agent of the insurance company. * * * I know why they (the policies) were taken up by the special agent of the company; they had been cancelled by registered mail and the *home office* wanted the original policies themselves."

We are of opinion the evidence supports the conclusion that the original policies were at the home office in New Haven, Connecticut, beyond the jurisdiction of the court. No effort to secure the policies from the home office was shown. This being true, what is the law regarding the receipt of secondary evidence?

An investigation of the question leads to the discovery that the decisions of our own court are in conflict on the subject, one line being in accord with the decisions of the supreme court of this state, and the other line in conflict therewith.

Pursing the inquiry reveals that there is no uniformity in the decisions of the courts of the various states on the subject. Greenleaf on Evidence, 16th Ed., vol. 1, sec. 563e, subdivision 2, states the result of the author's investigation in the following language: "If the writing is in the control of a third person without the jurisdiction of the court, no resort to legal force is of service. But it is possible to maintain that the party desiring to use the document should at least make an effort to obtain the writing by consent of its possessor; and upon this point there is much difference of opinion. A number of courts distinctly insist that some such effort must have been made; the *majority* of rulings either assume or decide that no effort to obtain is necessary; * * *"

In Corpus Juris, vol. 22, sec. 1329d, page 1036, without undertaking to state the weight of authority, the conflict therein is adverted to in the following language: "In a large number of cases where primary evidence of the fact to be proved was out of the jurisdiction of the court in which

the evidence was desired to be used, as where books, instruments, documents, or other writings constituting or containing the primary evidence were in possession of a stranger who was beyond the jurisdiction of the court and the reach of its process, courts have held secondary evidence admissible, apparently without further proof of inability to procure the original writings. Other authorities, however, assert the view that the fact that the writing is in the possession of a person beyond the jurisdiction of the court is not in itself sufficient ground for the introduction of secondary evidence; but that it must be shown that fruitless efforts have been made to obtain the writing, or the court must be satisfied that with the exercise of due diligence the writing cannot be produced. * * *"

To the same effect is Ruling Case Law, vol. 10, sec. 70, at page 913. In both Corpus Juris and Ruling Case Law the opinions upon the subject are cited on both sides of the question under the references heretofore stated.

In Wharton's Criminal Evidence, vol. 1, 10th Ed., sec. 200, page 429, he appears to state the rule to be that secondary evidence may be given as to the contents of "papers beyond the jurisdiction of the court, provided effort has been made to obtain the evidence of the party holding them, * * *" but later on in the same section he states that "parole evidence of an insurance policy is admissible where it has been shown to have been surrendered to an agent out of the court's jurisdiction before the trial," citing in support of the latter statements, State v. Watson, 63 Me., 128.

In the case of Federal Chemical Company v. Jennings, 112 Miss., 513, 73 So., 567, and reported in L. R. A., 1917D, at page 529, will be found authorities collated from the courts of many states upon the subject under consideration.

Coming to the decisions of our own state it is found that the Supreme Court had adopted the rule that if the primary evidence is in the hands of a stranger to the suit beyond the jurisdiction of the court secondary evidence will be admissible in the absence of a showing that some effort had been made to procure the original. In M., K. & T. Railroad of Texas v. Dilworth, 95 Texas Crim. Rep., 327, 67 S. W., 88, the conclusion of Judge Gaines with reference to the question is stated very tersely in this language: "In some of the courts, it is held that it must be shown that some effort has been made to procure the original, but the weight of authority seems to be that such showing is not necessary."

See also Smith v. Traders National Bank, 82 Texas Rep., 368, 17 S. W., 779; McBride v. Willis and Brother, 82 Texas Rep., 141, 18 S. W., 205; Veck v. Holt, 71 Texas Rep., 715, 9 S. W., 743. In Corpus Juris, vol. 22, sec. 1329d, page 1036, will be found many cases decided by courts of civil appeals of the state in which the supreme court ruling is followed.

In our own court it will be found that the rule adopted by the supreme court has been followed in Robey v. State, 73 Texas Crim. Rep., 9, 163 S. W., 713; Arensman v. State, 79 Texas Crim. Rep., 546, 187 S. W., 471, and James v. State, 88 Texas Crim. Rep., 656, 228 S. W., 941. On the other hand, in Moore v. State, 66 Texas Crim. Rep., 169, 146 S. W., 183; Brown v. State, 67 Texas Crim. Rep., 543, 150 S. W., 436, and Cox v. State, 100 Texas Crim. Rep., 172, 272 S. W., 490, this court followed the other line of authorities to the effect that secondary evidence would not be received where the primary evidence was beyond the jurisdiction of the court unless proper diligence to obtain it was shown. The learned judge who wrote the opinions in the Moore and Brown cases was a member of the court when the later cases of Robey and Arensman were decided. While in the two first mentioned cases and in Cox's case, insurance policies were involved and in the two later cases, as well as in James' case, the subject of the evidence sought was other things, the principal is the same, and the cases seems irreconcilable. The writer of the opinion in Cox's case followed Moore's case, and made no reference to the holding in James' case.

The rule of admitting secondary evidence where the primary evidence is beyond the jurisdiction of the court in the hands of a stranger to the suit without the necessity of showing an effort to secure it is based on the fact that the primary evidence cannot be reached by a subpoena duces tecum or any other process of the court. In civil cases either party to the suit may take depositions of the witness out of the state, and at least request that the documents consisting of the primary evidence be attached to his answers. If the showing above referred to is not required as preliminary to receiving secondary evidence in civil cases there would seem a much stronger reason for applying the same rule in criminal cases where one party to the litigation (the state) is not permitted to take depositions. The principle is much the same as permitting the reproduction of the testimony of a witness who is beyond the jurisdiction of the court on a subsequent trial. It is largely a rule of necessity. There ought not to be a conflict in the holdings of the two courts of last resort in this state on the subject unless a good reason exists therefor on account of some procedural requirement. We have not been able to discover any such reason. After a careful examination of many authorities from our own state, as well as those from other jurisdictions, we have concluded that the more reasonable rule is the one permitting secondary evidence where the primary evidence is beyond the jurisdiction of the court, without the necessity of showing an effort to obtain it. So concluding, and in order that no further conflict may appear, the cases of Brown v. State, 67 Texas Crim. Rep., 543, 150 S. W., 436; Moore v. State, 66 Texas Crim. Rep., 169, 146 S. W., 183, and Cox v. State, 100 Texas Crim. Rep., 172, 272 S. W., 490, are expressly overruled on the point involved.

If we had not reached the conclusion heretofore stated with reference to the proof of the insurance policy we would hesitate long before reversing the case upon the point urged by appellant. Under the provisions of articles 1311 and 1312 of the P. C., the owner may destroy his property by fire unless it is a house within a city, or when it is insured, or under certain other circumstances provided in the statute not pertinent here. The indictment in the present case charged that the property burned was situated in the city of Texarkana, and further alleged that said house was insured. Assuming that the evidence shows that appellant burned the house, proof either that the house was within the city of Texarkana, or that it was insured, would have made out a complete case of arson. By reason of the manner of the allegations in the indictment the court required the jury to find from the evidence beyond a reasonable doubt not only that the property was situated in the city of Texarkana, but also that it was insured. The charge was more onerous against the state than required, unless it was necessary because of the peculiar wording of the indictment. The uncontradicted evidence in the case established the fact that the property was situated in the city of Texarkana. Appellant secured the lowest penalty.

We have again reviewed the testimony in view of appellant's insistence that the evidence is not sufficient to corroborate the accomplice witness. We think it unnecessary to restate the evidence in detail, but believe the conclusions expressed in our original opinion regarding this matter to be correct.

The motion for rehearing is overruled.

*Overruled.*